COPY

1    Thomas R. Malcolm (State Bar No. 39248)
     trmalcolm@jonesday.com
2    Richard J. Grabowski (State Bar No. 125666)
     rgrabowski@jonesday.com
3    Marc K. Callahan (State Bar No. 156616)
     mkcallahan@jonesday.com
4    Marc S. Carlson (State Bar No. 210592)
     mscarlson@jonesday.com
5    JONES DAY
     3 Park Plaza, Suite 1100
6    Irvine, California 92614
     Telephone:  (949) 851-3939
7    Facsimile:   (949) 553-7539

8    Attorneys for Plaintiff
     EXPERIAN INFORMATION
9    SOLUTIONS, INC.

FILED

2008 FEB 13  AM 11:29

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13   EXPERIAN INFORMATION              Case No.  **SACV08-00165 AG (MLG✗)**
     SOLUTIONS, INC., a corporation,
14                                     Assigned for all purposes to:
                 Plaintiff,
15                                     DEMAND FOR JURY TRIAL
          v.
16                                     **COMPLAINT FOR:**
     LIFELOCK, INC., a corporation; and
17   DOES 1 through 10, inclusive,     1.  Declaratory Relief;

18               Defendant.           2.  Concealment/Suppression of
                                           Fact;
19
                                      3.  Intentional Misrepresentation;
20
                                      4.  Negligent Misrepresentation;
21
                                      5.  Violation of Lanham Act;
22
                                      6.  Violation of California Business
23                                         & Professions Code § 17500;

24                                    7.  Violation of California Business
                                           & Professions Code § 17200;
25
                                      8.  Unjust Enrichment/Restitution;
26
                                      9.  Quantum Meruit.
27

28

LAI-2930464v1

**JURISDICTION AND VENUE**

1.    This Court has original jurisdiction over this matter, under 28 U.S.C. § 1331, in that it is a civil action arising under a law of the United States, specifically 15 U.S.C. § 1125 and 15 U.S.C. § 1681 *et seq.*

2.    This Court has original jurisdiction over this matter, under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand ($75,000.00) dollars.

3.    Venue is proper in the Central District of California, under 28 U.S.C. §1391(a), in that all of the defendants are subject to personal jurisdiction in this District at the time the action is commenced and a substantial part of the events or omissions on which the claims in this matter are based occurred in this District.

**INTRODUCTION**

4.    This action arises out of LifeLock, Inc.'s ("LifeLock") illegal placement of "fraud alerts" on the credit files maintained by Experian Information Solutions, Inc. ("Experian") and other consumer reporting agencies.  In conjunction therewith, LifeLock is engaged in a pattern of false and misleading advertising and fraud, which has and continues to mislead and damage Experian and consumers.

5.    Under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), any consumer who asserts a good faith suspicion that he or she has been or is about to become a victim of fraud or related crime, including identity theft, may request that a national consumer reporting agency (such as Experian) place an "initial fraud alert" in his or her credit file for at least 90 days.  These initial alerts are a temporary measure to be requested only when the consumer actually suspects that identity theft has occurred or is about to occur.  If the consumer thereafter confirms that fraud has occurred, the FCRA provides for an "extended" fraud alert when the consumer provides a police report or other "identity theft report".

6.    Because the placement of initial fraud alerts is limited by statute to only those consumers who actually believe that fraud has occurred or is imminent, a prospective issuer of credit is required by law to take reasonable steps to confirm the identity of the person making the request before opening a new credit account or increasing a credit limit in the name of that consumer.

7.    Under the FCRA, an initial fraud alert is available to any eligible consumer—for free — from a national consumer reporting agency.  Consumers can place a free initial fraud alert simply and quickly through a toll-free telephone number, the internet or mail. However, the FCRA mandates that a request for an initial fraud alert *must be made directly by the consumer or by an individual acting on behalf of or as a personal representative of a consumer*.  The FCRA does not permit the placement of an initial fraud alert by corporations such as LifeLock. Despite this prohibition, LifeLock has surreptitiously placed hundreds of thousands of fraud alerts on Experian's files by posing as the consumer.

8.    Once an initial fraud alert is placed, it triggers costly statutory obligations for consumer reporting agencies such as Experian. First, Experian and the other credit reporting agencies are required to mail a notice to each consumer each time a fraud alert is filed explaining various rights that the consumer has, including the right to receive a free credit report by virtue of the placement of a fraud alert. Experian is then mandated to provide a free credit report to any such consumer who requests one. Although costly for the credit reporting agencies, these requirements make sense in the context of a statute that was designed to protect consumers who have an actual and legitimate concern that fraud has occurred or is imminent. However, as described more fully below, such obligations were never intended to be triggered by a private company seeking to profit by illegally placing fraud alerts on behalf of consumers who do not have a genuine suspicion of imminent fraud.

9.    Befitting a company whose co-founder has spent time in jail after having been arrested for financial fraud and who has been barred by the FTC for life from engaging in certain credit reporting related activities, LifeLock's business model consists of a scheme to "game the system," which is imbued with illegal activity, fraud and deception at every level:

a.    As a corporation, LifeLock is not legally entitled to place fraud alerts on behalf of consumers, but continues to do so thousands of times per month;

b.    LifeLock deceives Experian (and other consumer reporting agencies) by actively concealing that its requests are being submitted by a corporation;

c.    LifeLock misleads consumers into believing that it is authorized to place fraud alerts with credit reporting agencies when it is not;

d.    Although initial fraud alerts are designed to be temporary, 90 day measures for people who actually discover or suspect fraud, LifeLock deceives consumer reporting agencies into implementing an indefinite or perpetual state of "initial" alert by submitting a "new" fraud alert request every 90 days;

e.    LifeLock misleads consumers into believing that the FCRA authorizes the repeated, sequential and perpetual placement of initial fraud alerts when it does not;

f.    LifeLock submits requests for alerts every 90 days where neither LifeLock nor the consumer has a good faith suspicion that fraud has occurred or is imminent.

10.    LifeLock actively advertises that its customers "...will receive an email from us stating that your credit reports have been ordered on your behalf from the major credit bureaus." What LifeLock does not adequately disclose to the consumer is that it is charging the consumer to obtain his or her one free annual report to which they are entitled to under law. Rather than *pay* for a credit report at each of the major credit bureaus, LifeLock goes to the "centralized source" that the

1   major credit bureaus were required to jointly establish in order to provide
2   consumers with the free annual credit report. LifeLock then requests the
3   consumer's one free annual report from each of the major credit bureaus by posing
4   as that consumer. Thereafter when a LifeLock customer goes to the centralized
5   source to obtain a copy of his or her free annual credit report, that request is denied
6   because LifeLock already used it.

7       11.   LifeLock's scheme damages Experian (and other consumer reporting
8   agencies), consumers, and the economy as a whole. LifeLock's scheme costs
9   Experian millions of dollars every year in processing large numbers of improper
10   initial fraud alerts, mailing mandatory notices to consumers, and providing free
11   credit reports to consumers who are not eligible for such reports. The consuming
12   public has been harmed too. LifeLock's scheme creates the impression that
13   consumers must pay for the protections provided by initial fraud alerts, potentially
14   deterring those who legitimately need fraud alerts but who cannot afford LifeLock's
15   subscription fees. LifeLock's fraudulent scheme harms the economy as well.
16   LifeLock's practices threaten to clog the credit system with stale and unnecessary
17   fraud alerts, potentially devaluing the efficacy of necessary alerts as LifeLock
18   "cries wolf" on behalf of thousands of unthreatened customers. Further, LifeLock's
19   practices also unnecessarily slow the extension of credit, impose additional costs
20   and burdens on businesses, and may lead to unnecessary denials of legitimate
21   applications for credit thereby forcing consumers to make repeated applications for
22   credit and harming their credit scores in the process.

23       12.   As a result of LifeLock's wrongful conduct, Experian seeks:
24   (i) declaratory relief establishing the parties' rights under the FCRA; (ii) restitution
25   of the costs to Experian for LifeLock's wrongful conduct; (iii) disgorgement of
26   profits earned by LifeLock as a result of its illegal practices; (iv) compensatory and
27   punitive damages; and (v) an injunction precluding LifeLock from continuing to
28   engage in false and misleading advertising regarding (a) its services and (b) the

1   efficacy and availability of fraud alerts (for free) from Experian, Trans Union
2   and Equifax.

3                                **PARTIES**

4        13.   Experian is an Ohio corporation having its principal place of business at
5   475 Anton Boulevard, Costa Mesa, California 92626.

6        14.   LifeLock is a Delaware corporation with its principal place of business
7   located at 60 Salado Pkwy, Tempe, Arizona 85281.

8        15.   The true names and capacities, whether individual, corporate, associate
9   or otherwise, of the defendants named as DOES 1 through 10, inclusive, are
10  unknown to Experian who, therefore, sues those defendants by such fictitious
11  names.  Experian is informed and believes and thereon alleges that each of the
12  defendants sued herein as DOES 1 through 10 are and were the agents and/or
13  employees of each and every other defendant and were at all relevant times acting
14  within the course and scope of such agency and employment, and/or are legally
15  responsible in some manner for the events and happenings herein referred to and
16  caused injuries and damages proximately thereby to Experian as herein alleged.
17  Experian will seek to amend its complaint to allege the true names and capacities of
18  such defendants when ascertained.

19       16.   Experian is informed and believes and thereon allege that, at all
20  relevant times, each Defendant was acting as the agent, employee, principal,
21  officer, partner, joint venturer, director or other representative of one or more of the
22  other Defendants, and, in committing the acts and/or omissions mentioned herein,
23  was acting within the course and scope of such employment, agency, partnership,
24  joint venture, or other relationship, and with the knowledge and consent of the
25  remaining Defendants.

26

27

28

## BACKGROUND

## THE FCRA AND THE FRAUD ALERT SYSTEM

17.    The FCRA provides for three types of fraud alerts, which are available to consumers based upon the consumers' risk of becoming, or having been, an actual victim of fraud, including identity theft. *See* 15 U.S.C. §§ 1681c-1(a)(1), 1681c-1(b)(1), 1681c-1(c).  These fraud alerts are not available as a matter of right to all consumers, but only upon a showing that the consumer falls within a particular risk category, entitling them to receive a fraud alert.

18.    Under 15 U.S.C. § 1681c-1(a), a consumer can request an "initial" 90-day fraud alert, which is designed as a temporary, stopgap measure for a consumer who suspects he or she has been or is in imminent danger of becoming a victim of fraud.  Such alerts are available to consumers "[u]pon the direct request of a consumer, or an individual acting on behalf of or as a personal representative of a consumer, who asserts in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft…" and the provision of "appropriate proof of the identity of requestor." 15 U.S.C. § 1681c-1(a)(1).

19.    Once a consumer requests an initial alert and asserts his or her good faith suspicion, the credit reporting agency must:  (i) include a fraud alert in that consumer's file for at least 90 days (15 U.S.C. § 1681c-1(a)(1)(A)); (ii) refer the fraud alert to each of the other credit reporting agencies (15 U.S.C. § 1681c-1(a)(1)(B)); (iii) disclose to the consumer that the consumer may receive a free copy of his credit report (15 U.S.C. § 1681c-1(a)(2)(A)); and (iv) provide the consumer with a credit report free of charge upon the request of the consumer (15 U.S.C. § 1681c-1(a)(2)(B)).

20.    Under 15 U.S.C. § 1681c-1(b), a consumer who is the actual victim of a documented case of identity theft can obtain an "extended" fraud alert.  Extended alerts are available "[u]pon the direct request of a consumer, or an individual acting

1   on behalf of or as a personal representative of a consumer, who submits an identity

2   theft report to a consumer reporting agency…" 15 U.S.C. § 1681c-1(b)(1).

3       21.   Once a consumer requests an extended alert and provides an identity

4   theft report, the credit reporting agency must: (i) include a fraud alert in the

5   consumer's file for the next seven (7) years (15 U.S.C. § 1681c-1(b)(1)(A)); (ii) for

6   the next five (5) years, "exclude the consumer from any list of consumers provided

7   by the agency to any third party to offer credit or insurance to the consumer that

8   was not initiated by the consumer" (15 U.S.C. § 1681c-1(b)(1)(B)); (iii) refer the

9   fraud alert to each of the other credit reporting agencies (15 U.S.C. § 1681c-

10   1(b)(1)(C)); (iv) disclose to the consumer that the consumer may receive a free

11   copy of his credit report (15 U.S.C. § 1681c-1(b)(2)(A)); and (v) provide the

12   consumer with a credit report free of charge upon the request of the consumer

13   (15 U.S.C. § 1681c-1(b)(2)(B)).

14       22.   Section 15 U.S.C. § 1681c-1(c) allows an "active duty military

15   consumer" to obtain a 12-month fraud alert. Active duty alerts are available

16   "[u]pon the direct request of a consumer, or an individual [not a corporate entity]

17   acting on behalf of or as a personal representative of an active duty military

18   consumer…" 15 U.S.C. § 1681c-1(c). This is the only type of alert permitted

19   under the FCRA that allows consumers to obtain a fraud alert without any type of

20   showing that they are, or are likely to become, a victim of fraud.

21       23.   The FCRA provides that whenever a consumer reporting agency

22   receives a request for an initial fraud alert, the agency must "refer the information

23   regarding the alert" to each of the other credit reporting agencies. 15 U.S.C.

24   § 1681c-1(a)(B). When a credit reporting agency receives a referral from another

25   credit reporting agency, it must follow the procedures for handling the fraud alert

26   "as though the agency received the request from the consumer directly." 15 U.S.C.

27   § 1681c-1(e). Because Experian has no way of determining whether an initial fraud

28   alert that was referred to Experian from another credit reporting agency was legal

1   (i.e., a request from "a consumer, or an individual acting on behalf of or as a

2   personal representative of a consumer") or illegal (i.e., through LifeLock), without

3   seeking verification directly from each consumer, Experian:  (i) places an initial

4   fraud alert on the consumer's file; (ii) notifies the consumer of the availability of a

5   free credit report; and (iii) within three (3) days, provides a free credit report to the

6   consumer upon the consumer's request.

7        24.   The FCRA specifically provides that credit reporting agencies must

8   honor a request for an initial fraud alert from "a consumer, or an individual acting

9   on behalf of or as a personal representative of a consumer."  15 U.S.C. §§ 1681c-

10  1(a)(1).  The FCRA does not require the credit reporting agencies to accept fraud

11  alerts placed by corporations (such as LifeLock) on behalf of consumers.

12       25.   "Initial" fraud alerts place limits on potential creditors who use a credit

13  report to establish a "new credit plan," grant an "extension of credit," issue an

14  "additional credit card" on an existing account, or "grant an increase in credit limit"

15  on an existing account.  15 U.S.C. § 1681c-1(h)(1)(B).  When an initial fraud alert

16  appears on a consumer's credit report, the creditor must "utilize[] reasonable

17  procedures to form a reasonable belief that the user knows the identity of the person

18  making the request."  15 U.S.C. § 1681c-1(h)(1)(B).  The consumer may provide a

19  contact phone number in placing a fraud alert; however, there is no requirement that

20  the creditor call the consumer directly to verify that the consumer has authorized

21  the credit application.   Instead of calling the consumer, the creditor may "take

22  reasonable steps to verify the consumer's identity and confirm that the application

23  or a new credit plan is not the result of identity theft."  15 U.S.C. § 1681c-

24  1(h)(1)(B)(ii).

25       26.   Fraud alerts only are effective against certain types of fraud.  While

26  they can be useful to prevent the opening of certain new accounts that require a

27  credit report to be pulled, they are ineffective to prevent identity theft involving the

28  opening of accounts that do not require a credit report.  Fraud alerts provide no

1   protection to individuals against the fraudulent use of existing accounts, such as the

2   unauthorized use of a credit card, and they provide little or no protection against an

3   identity theft that already is in progress.

4      27.   A fraud alert places a significant burden on creditors before they may

5   grant credit. For example, it imposes upon them an obligation "to take reasonable

6   steps to verify the consumer's identity and confirm that the application for a new

7   credit plan is not the result of identity theft." 15 U.S.C. § 1681(h)(1)(B). These

8   measures are over and above the procedures that many creditors have in place for

9   verifying a consumer's identity prior to granting credit.

10      28.   Fraud alerts can have unintentional negative effects on individuals, and

11   their ability to obtain credit. Creditors can simply deny a credit application if a

12   consumer's credit report has a fraud alert rather than implement procedures that

13   satisfy the verification requirements. For creditors that implement verification

14   procedures, they must deny a credit application if the creditor is unable to verify the

15   legitimacy of the application at the time of processing. Thus, unnecessary fraud

16   alerts can result in increased denials of credit to consumers who neither are the

17   victims of identity theft nor are about to become victims of identity theft. Denials

18   such as these can lead to repeated attempts to apply for credit which, in turn, may

19   reduce a consumer's credit score or credit rating. Further, the cumulative effect of

20   placing unwarranted and unauthorized fraud alerts on consumers' files places undue

21   and unnecessary burdens on the credit granting industry as a whole, and results in

22   even broader implications for the economy.

23      29.   Under 15 U.S.C. § 1681j(a), each of the national credit reporting

24   agency must provide every consumer with a free credit report once per year upon

25   the request of the consumer. The free credit report is available to consumers

26   through a "centralized source" located at www.annualcreditreport.com, and

27   established jointly by the three national credit bureaus. The credit reporting

28   agencies are required to provide the free annual credit report "only if the request

1    from the consumer is made using the centralized source established for such

2    purpose…" 15 U.S.C. § 1681j(a)(1)(B). The free credit reports are available online

3    immediately, or are mailed to consumers at their address on file with the credit

4    reporting agencies for consumers who request their credit reports by telephone, or

5    in writing.

6                                    **EXPERIAN**

7          30.   Experian is a consumer credit reporting agency under the FCRA. As a

8    consumer credit reporting agency, Experian acts as a conduit of credit information

9    that is pertinent to prudent credit granting and related decisions. Experian gathers

10   credit information originated by others, and makes that information available to

11   parties engaged in credit-related transactions. Experian essentially acts as a

12   storehouse of credit information by storing, retrieving, and furnishing data as

13   allowed by the FCRA and similar state laws.

14         31.   Under 15 U.S.C. § 1681c-1, Experian allows individuals to request

15   "initial" fraud alerts — the exact same fraud alerts placed by LifeLock's paid

16   service — quickly and easily over its website located at www.experian.com or

17   through a toll-free number (which is posted on Experian's website) and without

18   cost. The request process can be completed in a matter of minutes; the process is

19   completely free of charge; Experian automatically generates a notice to consumers

20   that they can request a free credit report and provides credit reports for those who

21   make that request; online consumers who request a report may immediately view

22   their credit report over the Internet; telephone consumers who request a report will

23   receive a credit report in the mail; those who request an extended alert may request

24   two free reports in the twelve month period after they submit an identity theft

25   report; and Experian automatically refers all fraud alerts to the other credit

26   reporting agencies.

27

28

**LIFELOCK**

32.    Todd Davis and Robert J. Maynard, Jr. founded LifeLock in 2005. Although LifeLock has touted its founders as "seasoned veterans of the banking credit and security industries," who "did solid research for more than three years" to develop its system, LifeLock does not disclose less auspicious information about its founding and, specifically, about its founding-member, Maynard. According to newspaper reports, Maynard developed the idea for LifeLock while sitting in a jail cell after having been arrested for reneging on a $16,000.00 casino marker taken out at the Mirage Hotel in Las Vegas. Maynard, who initially held the title of Chief Operating Officer, and later Marketing Director, had been banned for life by the FTC from "advertising, promoting, offering for sale, selling, performing, or distributing any product or service relating to credit improvement services." That lifetime ban resulted from Maynard's previous scheme involving the operation of a credit repair clinic. The credit repair industry is notorious for a multitude of unsavory practices and characters. This fact is particularly relevant here given that the legislative history to the FCRA confirms that the statute was drafted to specifically exclude companies, like credit repair agencies, from placing fraud alerts on consumer credit files: The legislative history states that the statute "use[s] the word 'individual' instead of 'person' to ensure that the provision would only apply to specific individuals such as a consumer's authorized family members or guardians (or attorneys acting as personal representatives), authorized representatives from bona fide military service organizations, **and not to companies and entities such as credit repair clinics.**" *See* H.R. Rep. No. 108-263 at 40 (Sept. 4, 2003) (emphasis added).

33.    Despite all of this, under the scheme developed by Maynard and his partners, LifeLock charges consumers to request placement of initial fraud alerts, even though they are available for free from a consumer reporting agency upon

1   direct request of the consumer.  LifeLock currently charges $10 per month or $110
2   per year.
3       34.    Under the FCRA, LifeLock is not authorized to request placement of an
4   initial fraud alert on a consumer's credit file; instead, only the consumer, or an
5   individual acting on behalf of or as a representative of the consumer, may submit
6   requests for the placement of initial fraud alerts.  But LifeLock improperly places
7   fraud alerts for consumers.  Worse yet, LifeLock does so for consumers who are not
8   even eligible for such alerts.
9       35.    The FCRA requires that the consumer or personal representative "assert
10  in good faith a suspicion that the consumer has been or is about to become a victim
11  of fraud or related crime, including identity theft…"  LifeLock submits requests
12  where neither it nor its customers have such a belief.  LifeLock's advertising and
13  customer intake process attempts to dilute this standard by convincing consumers
14  that fraud alerts may be set as a proactive, preventive measure to combat identity
15  theft rather than in reaction to a good faith suspicion that they are or are about to
16  become a victim of identity theft (as required by the FCRA).  For example,
17  LifeLock's website repeatedly touts LifeLock as "proactive identity theft
18  protection," and even suggests that the desire to stop receiving junk mail "alone is
19  worth the price."  LifeLock's order form asks consumers to state "why do you think
20  you or your family members will become a victim of identity theft?"  Among the
21  answers scripted by LifeLock (which allow consumers to enroll in LifeLock) are
22  responses that are not assertions "in good faith that the consumer has been or is
23  about to become a victim of fraud…" — to wit:  (i) "I have heard media reports that
24  give me a reason"; or (ii) "One of my friends or family members is a victim of
25  identity theft."  Worse, LifeLock allows customers who did not, or refuse to,
26  disclose their reason to enroll (provided they pay LifeLock a fee).
27      36.    LifeLock's scheme also includes automatically renewing the initial
28  fraud alerts, and continuing to renew the alerts, so long as the consumer continues

1    to pay LifeLock a subscription fee.  This conduct effectively converts "initial" fraud
2    alerts into perpetual or indefinite "initial" alerts.  The FCRA does not authorize
3    indefinite fraud alerts under any of the three categories of alerts established by
4    Congress.

5        37.    LifeLock does not require that its customers affirmatively assert —
6    prior to making each request for an initial fraud alert — that they believe that they
7    are or about to become victims of fraud or related crime, including identity theft.
8    Instead, after misleading consumers into believing that lesser fears or concerns
9    constitute a good faith suspicion of identity theft, LifeLock seeks the consumer's
10   agreement to notify LifeLock if that suspicion ever changes.  The FCRA does not
11   authorize the placement of an initial fraud alert where that request is based upon the
12   consumer's failure to retract an assertion that the consumer was or was about to
13   become a victim of fraud or related crime, including identity theft, which was made
14   in connection with a prior request for an initial fraud alert.

15       38.    In order to place fraud alerts on behalf of consumers with Experian,
16   LifeLock has engaged in systematic fraud and concealment.  Experian has
17   established an automated system over a toll free number to allow consumers to
18   quickly and easily place fraud alerts for free.  Experian's automated phone system
19   requires its users to input information following a series of prompts.  Although the
20   precise wording of the prompts has varied over time, the substance has not.  These
21   prompts require, among other things, the caller to respond affirmatively to
22   statements such as: (i) "if you believe your credit information is being used
23   fraudulently, press 3"; (ii) "to add an alert to your credit report through our
24   automated system, press 2"; and (iii) "if you suspect you are a victim of fraud and
25   want to add a temporary initial fraud security alert to your account, press 1."  The
26   prompts also ask the caller to enter personal information, such as "enter your social
27   security number," "enter your 5 digit ZIP code now," and "enter the numeric
28   portion of your address now."

39.   After calling Experian's telephone system, LifeLock responds affirmatively to these prompts by pressing the corresponding number and by entering in the requested information. This is fraud: (i) *LifeLock* did not believe that its own credit information was being used fraudulently or that it was a victim of fraud; (ii) *LifeLock* was not seeking to add an alert to its credit reports; (iii) *LifeLock* was not seeking a temporary alert (but was seeking to craft an indefinite or perpetual alert for someone else); and (iv) *LifeLock* did not enter its own social security number, ZIP code or address.

40.   Experian's automated system also includes a prompt for personal representatives requesting a fraud alert on the behalf of another to press the appropriate number, with corresponding instructions to submit a written request to Experian. LifeLock did not respond affirmatively to that prompt or make the written submission that Experian's instructions required.

41.   Further, LifeLock did not have a good faith suspicion that the consumer had been or was about to become a victim of fraud or related crime, including identity theft. LifeLock knew that, in many cases, the consumers on whose behalf it was surreptitiously and illegally requesting the placement of initial fraud alerts were instead acting on desires to proactively prevent identity theft, generalized concern about identity theft, the suspected victimization of a person other than the consumer, on the basis of media reports about identity theft, or even a desire not to receive junk mail.

42.   Additionally, many of LifeLock's customers were not affirmatively asserting, at the time that LifeLock made the request for the placement of a fraud alert, that they had been or were about to become a victim of fraud. Instead, the customers had simply failed to retract assertions made months or years previously in connection with a prior request for an initial fraud alert.

43.   In addition to making express misrepresentations to Experian to induce Experian place fraud alerts on behalf of LifeLock, LifeLock engaged in an

1    elaborate scheme to disguise its activities, including laundering the fraud alerts
2    through the other national credit reporting agencies.

3        44.    LifeLock placed large numbers of fraud alerts, as many as thousands
4    per day, through Experian's toll-free number using a single telephone number based
5    in Canada.  This caused Experian to incur significant costs in maintaining its toll-
6    free number, which is toll-free to consumers, but which Experian must pay for on a
7    per call basis.

8        45.    After Experian discovered that the calls were placed by LifeLock, not
9    consumers as LifeLock had represented, Experian attempted to block calls from this
10   number. LifeLock then attempted to disguise its activities by placing calls through
11   another phone bank, this time in Pennsylvania, which Experian again discovered
12   and attempted to block.  LifeLock then resorted to larger banks of telephone
13   numbers in an attempt to further disguise its activities; Experian once again
14   discovered LifeLock's activities and attempted to block the calls.  Upon
15   information and belief, Experian's efforts to completely block all of LifeLock's
16   improper  phone calls into Experian's system have been unsuccessful, and LifeLock
17   continues to improperly use Experian's phone system to place fraud alerts on behalf
18   of consumers.

19       46.    LifeLock also continues to place fraud alerts with Experian by
20   laundering these alerts through Trans Union and Equifax.  LifeLock games the
21   automatic referral system for fraud alerts established in 15 U.S.C. § 1681c-
22   1(a)(1)(B) by fraudulently representing to Trans Union and Equifax that LifeLock
23   is a "consumer" or "individual" placing a fraud alert on its own credit file, and
24   concealing its identity as a corporation from Trans Union and Equifax.  Trans
25   Union and Equifax then automatically forward such alerts to Experian.  When
26   Experian receives those alerts, Experian: (i) is unable to determine whether the
27   referred alerts were placed by LifeLock or whether they were placed by consumers;
28   and (ii) must honor the fraud alerts as if placed by consumers directly with

1  Experian.  If Experian could effectively determine which fraud alerts were placed
2  by LifeLock, Experian would block such requests.

3      47.    In order to maximize the number of consumers who request LifeLock
4  to place fraud alerts with Experian, LifeLock has engaged in a campaign to mislead
5  consumers into enrolling for LifeLock's service.  LifeLock markets its product
6  through its website located at www.lifelock.com, through press releases and news
7  outlets, and through television and radio commercials.  The representations made in
8  LifeLock's marketing are false, misleading, and fail to disclose material facts
9  regarding the service offered by LifeLock.

10     48.    **LifeLock Misrepresents Its Authority And Ability To Place Alerts.**
11 LifeLock misrepresents and creates the overall net impression that LifeLock can
12 place fraud alerts on behalf of consumers even though the FCRA does not require
13 credit reporting agencies to honor requests made by corporations.  Specific
14 misrepresentations include, *inter alia*:

15         (i)    "[W]e will, upon enrollment...request that Equifax, Experian
16                and TransUnion, or other credit bureau [sic] as may become
17                appropriate, place fraud alerts on your consumer to the extent
18                permitted by 15 U.S.C. § 1681c-1." (LifeLock Website at the
19                webpage address: www.lifelock.com/about-us/about-
20                lifelock/terms-and-conditions, dated Jan. 26, 2008.)

21         (ii)   "[W]e...use integrity and operate within the law." (LifeLock
22                Website at the webpage address: www.lifelock.com/lifelock-for-
23                people/who-we-are/who-uses-lifelock, dated Jan. 26, 2008.)

24     49.    **LifeLock Misrepresents What Constitutes A Sufficient Good Faith**
25 **Belief Regarding Identity Theft.**  LifeLock induces consumers to enroll in its
26 service by misleading them as to what constitutes a "good faith...suspicion that the
27 consumer has been or is about to become a victim of fraud or related crime,
28 including identity theft."  LifeLock creates the net impression that general concerns

1  about identity theft or the proactive desire to prevent identity theft is a sufficient

2  basis to place a fraud alert. They are not. LifeLock's website repeatedly touts

3  LifeLock as "proactive identity theft protection." (LifeLock Website at the webpage

4  address: www.lifelock.com, dated Jan. 26, 2008.) LifeLock's website includes

5  testimonials from customers who do not express any suspicion that they were or

6  were about to become the victim of identity theft: "I had seen a new report about

7  LifeLock. The CEO gave out his social security number on TV! The reporter tried

8  to use it to open new accounts and couldn't. That's when I signed up." (LifeLock

9  Website at the webpage address: www.lifelock.com, dated Jan. 26, 2008.)

10  LifeLock's advertisements and website suggest that a desire to end junk mail is a

11  sufficient reason to cause LifeLock to place fraud alerts: "[A]ll that mail is just so

12  irritating. Many of our clients tell us that this alone is worth the price." (LifeLock

13  Website at the webpage address: www.lifelock.com/lifelock-for-people, dated

14  Jan. 26, 2008.) LifeLock's website even includes testimonials from individuals

15  who enrolled in LifeLock even though they were skeptical that they needed

16  protection from identity theft: "When I first learned about a company called

17  LifeLock that protects families from identity theft, my husband was skeptical. I

18  signed us up anyway, and forgot about it." (LifeLock Website at the webpage

19  address: www.lifelock.com, dated Jan. 26, 2008.) LifeLock's order form asks

20  consumers to state "why do you think you or your family members will become a

21  victim of identity theft?" Among the answers scripted by LifeLock are responses

22  that are not assertions "in good faith that the consumer has been or is about to

23  become a victim of fraud…" such as: (i) "I have heard media reports that give me a

24  reason"; or (ii) "One of my friends or family members is a victim of identity theft."

25  LifeLock also allows customers who did not, or refuse to, disclose their reason

26  to enroll.

27       50.  **LifeLock Misrepresents That Everyone Is Entitled To Fraud Alerts**

28  **As A Preventative Measure.** LifeLock misrepresents, and creates the overall net

1   impression, that all individuals are entitled to receive a fraud alert. They are not.

2   The FCRA only allows individuals who "assert[] in good faith a suspicion that the

3   consumer has been or is about to become a victim of fraud or related crime" to

4   place an initial fraud alert on their credit files. LifeLock also makes such specific

5   misrepresentations, including, *inter alia*:

6       (i)   "[P]roactive identity theft protection." (LifeLock Website at the

7           webpage address: www.lifelock.com, dated Jan. 26, 2008.)

8       (ii)   "The key that everybody can do is go out and place a fraud alert

9           with the major credit bureaus." (Statement by Todd Davis, CEO

10          of LifeLock, Inc., in article titled "Fraud alerts can protect ID,"

11          www.azstarnet.com/business/202488, Sept. 22, 2008.)

12      (iii)  "Any individual with an identity worth protecting can benefit

13          from LifeLock proactive identity theft services." (LifeLock

14          Website at the webpage address: www.lifelock.com/lifelock-for-

15          people/who-we-are/who-uses-lifelock, dated Jan. 26, 2008.)

16      (iv)  "LifeLock, the industry leader in proactive identity theft

17          protection, offers a proven solution that prevents your identity

18          from being stolen before it happens." (LifeLock Website at the

19          webpage address: www.lifelock.com, dated Jan. 26, 2008.)

20      (v)   "This is the kind of preventative measures all companies should

21          be taking for their employees and the people they serve."

22          (LifeLock press release dated January 8, 2008, located at

23          www.lifelock.com/about-us/2008-press-release-narfe-premier-

24          federal-credit-union-selects-lifelock-to-provide-protection-to-

25          employees-and-members.)

26      51.   **LifeLock Misrepresents That Consumers Are Entitled To**

27  **Automatic Renewals.** LifeLock misrepresents and creates the overall net

28  impression that consumers are entitled to receive automatic renewals of fraud alerts

1   without an assertion of a good faith suspicion that the consumer has been or is

2   about to become a victim of fraud or related crime.

3       52.   **LifeLock Misrepresents To Consumers The Scope Or Effectiveness**

4   **Of Fraud Alerts.** LifeLock misrepresents and creates the overall net impression

5   that LifeLock can protect against all types of fraud including computer hacking and

6   accessing a bank account using stolen passwords when fraud alerts only are

7   effective against fraud that requires accessing a credit report.  LifeLock also makes

8   such specific misrepresentations, including, *inter alia*:

9           (i)   "Here's a report I have on John Sheiper, a young hacker – sent

10           out a virus, put more than 250,000 computers to work stealing

11           passwords to bank accounts from people around the world."

12           (LifeLock radio advertisement.)

13           (ii)   "This very second, someone could be using your identity

14           to…clear out your bank accounts …Stop it from happening now.

15           Call LifeLock…" (LifeLock radio advertisement.)

16           (iii)   "You'll find out how to lock down your identity making it

17           virtually impossible for identity thieves to wreak havoc on your

18           good name…" (LifeLock radio advertisement.)

19       53.   **LifeLock Misrepresents That Fraud Alerts Prevents Access To**

20   **Credit Reports.** LifeLock misrepresents and creates the overall net impression

21   that LifeLock "locks" the credit file of a consumer, when in fact it only requests the

22   placement of a fraud alert in the credit file, and does not restrict access to the credit

23   file in any way.  Such specific misrepresentations include, *inter alia*:

24           (i)   The use of the name "LifeLock;"

25           (ii)   "As our name states, we're the lock, and you hold the key;"

26           (LifeLock Website at the webpage address:

27           www.lifelock.com/lifelock-for-people/who-we-are/how-we-do-

28           it/how-is-lifelock-different-from-a-credit-monitoring-system,

1          dated Jan. 26, 2008.)

2     (iii)   "Our goal was to lock down every individual's private

3             information so no one except that individual can approve of its

4             use." (LifeLock Website at the webpage address:

5             www.lifelock.com/lifelock-for-people/who-we-are/who-is-

6             lifelock, dated Jan. 26, 2008.)

7     (iv)    "Which would you rather have, a lock on your door keeping the

8             thieves out, or an alarm telling you after the thief has ripped you

9             off." (LifeLock Website at the webpage address:

10            www.lifelock.com/lifelock-for-people/how-we-do-it/how-is-

11            lifelock-different-from-a-credit-monitoring-system, dated

12            Jan. 26, 2008.)

13       54.   **LifeLock Creates The Impression That Obtaining Fraud Alerts**

14   **Through Credit Bureaus Is More Difficult.**  LifeLock misrepresents and creates

15   the overall net impression that consumers cannot obtain fraud alerts effectively or

16   easily from any other source, and that obtaining fraud alerts without subscribing to

17   LifeLock is a time-consuming, difficult process, when in fact it is easier to obtain a

18   fraud alert directly with the credit bureaus than it is with LifeLock.  Such specific

19   misrepresentations include, *inter alia,* "Think of it this way: all of us can change

20   our own oil, but most of us have it done by specialists.  We'd like to think that what

21   we do is more complicated than changing oil, but you get the idea." (LifeLock

22   Website at the webpage address:  www.lifelock.com/lifelock-for-people, dated

23   Jan. 26, 2008.)  In fact, consumers can place fraud alerts with all three national

24   consumer reporting agencies with a simple and free telephone call to Experian.

25       55.   **LifeLock Misrepresents That Only It Can Place Fraud Alerts.**

26   LifeLock misrepresents, and creates the overall net impression, that only it can

27   place fraud alerts, that fraud alerts must be purchased through LifeLock, and that

28   the fraud alerts placed by LifeLock are different or more effective than fraud alerts

1    that consumers can place themselves directly through the credit bureaus.  LifeLock

2    claims, for example:  "At LifeLock, We Guarantee Your Good Name.  No one else

3    does because no one else can." (LifeLock Website at the webpage address:

4    www.lifelock.com, dated Jan. 26, 2008.)

5        56.   **LifeLock Misrepresents That It May Place Fraud Alerts Directly**

6    **With Experian.**  LifeLock misrepresents, and creates the overall net impression,

7    that it may place fraud alerts with Experian, does not disclose to consumers that

8    Experian has attempted to block the placement of fraud alerts by LifeLock, or that

9    LifeLock has placed fraud alerts with Experian by disguising its identity and

10   fraudulently misrepresenting to Experian that it was the consumer.  Such specific

11   misrepresentations include, *inter alia*:

12          (i)    "[W]e ask the credit bureaus to set fraud alerts on your behalf.

13                 Usually, this is done through our automated systems and the

14                 alerts are set within an hour." (LifeLock Website at the webpage

15                 address:  www.lifelock.com/lifelock-for-people, dated

16                 Jan. 26, 2008.)

17          (ii)   "[W]e will, upon enrollment...request that Equifax, Experian

18                 and TransUnion, or other credit bureau [sic] as may become

19                 appropriate, place fraud alerts on your consumer to the extent

20                 permitted by 15 U.S.C. § 1681c-1." (LifeLock Website at the

21                 webpage address: www.lifelock.com/about-us/about-

22                 lifelock/terms-and-conditions, dated Jan. 26, 2008.)

23       57.   **LifeLock Misrepresents That Creditors Will Call Consumers To**

24   **Verify The Identity Of The Consumer.**  LifeLock misrepresents and creates the

25   overall net impression, that consumers will receive a telephone call when the

26   consumers' personal information is used to apply for new credit, even though there

27   is no requirement under the FCRA that initial fraud alerts require creditors to place

28   a telephone call to consumers.  Such representations include, *inter alia*:

1    (i)   "Once fraud alerts have been placed, you will receive a phone
2           call – most people register their cell phone numbers – anytime
3           someone tries to open a credit line in your name." (Statement by
4           Todd Davis, CEO of LifeLock, Inc., in article titled "Fraud alerts
5           can protect ID," www.azstarnet.com/business/202488,
6           Sept. 22, 2008.)

7    (ii)   "If its you trying to open the account, then you'll get the call
8           while you're standing there." (Statement by Todd Davis, CEO of
9           LifeLock, Inc., in article titled "Fraud alerts can protect ID,"
10          www.azstarnet.com/business/202488, Sept. 22, 2008.)

11    (iii)  "You should receive a phone call from the bank asking if you are
12          actually the person applying for credit in your name." (LifeLock
13          Website at the webpage address: www.lifelock.com/lifelock-for-
14          people/what-we-do/how-does-lifelock-protect-my-identity, dated
15          Jan. 26, 2008.)

16    (iv)  "If it's not you or if you don't answer, then the credit application
17          is declined at the other end…" (Statement by Todd Davis, CEO
18          of LifeLock, Inc., in article titled "Fraud alerts can protect ID,"
19          www.azstarnet.com/business/202488, Sept. 22, 2008.)

20    (v)   "When someone seeks to open a new account, the creditor will
21          call to confirm that it's really you through a series of identifying
22          questions." (Statement by Todd Davis, CEO of LifeLock, Inc., in
23          article titled "Protecting identity among the tell-all generation,"
24          www.startribune.com/templates/Print_This_Story?sid=1191451,
25          Aug. 14, 2007.)

26    58.   **LifeLock Fails To Adequately Disclose To Consumers The Source**
27  **Of The Credit Report Ordered By LifeLock.** LifeLock represents to consumers
28  that its service includes a credit report from each of the three credit bureaus every

1   12 months.  LifeLock fails to adequately disclose, however, that the credit report

2   ordered by LifeLock on behalf of the consumer is the free annual credit report to

3   which consumers are entitled; fails to adequately disclose that LifeLock's ordering

4   of the credit report makes the consumer ineligible to order the report for the next 12

5   months; fails to adequately disclose that ordering the free credit report from

6   www.annualcreditreport.com is duplicative of the free credit report consumers are

7   entitled to when placing a fraud alert under 15 U.S.C. § 1681c-1(a)(2)(B).

8       59.   On February 11, 2008, Experian sent LifeLock a letter via express mail

9   informing LifeLock that Experian only was required to honor requests for fraud

10  alerts made by "consumers" or "individuals," not corporate entities such as

11  LifeLock; informing LifeLock that its practice of automatically renewing such

12  fraud alerts violated the FCRA's statutory scheme; and demanding that LifeLock

13  cease and desist placing fraud alerts on behalf of consumers with any of the three

14  credit bureaus and renewing such fraud alerts.  Experian further informed LifeLock

15  that if it continued in the activities described above, Experian would seek all

16  available remedies against LifeLock.  Undeterred, LifeLock continues to engage in

17  its illegal and fraudulent activities.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment Act against LifeLock and

### DOES 1 through 10)

21      60.   Experian repeats and reasserts the averments contained in Paragraphs 1

22  through 59 above as though fully set forth herein.

23      61.   An actual controversy has arisen and now exists between Experian and

24  LifeLock relating to the parties' rights and obligations under 15 U.S.C. § 1681c-1

25  for which Experian desires a declaration of rights.

26      62.   A declaratory judgment, under 28 U.S.C. § 2201, is necessary in that

27  Experian contends, and LifeLock denies, the following:

28          (i)    LifeLock neither is a "consumer" nor "an individual" "acting on

behalf of or as a personal representative of a consumer" within the meaning of 15 U.S.C. § 1681c-1(a)(1), and is not authorized to submit requests for initial fraud alerts to a consumer reporting agency under 15 U.S.C. § 1681c-1.

(ii)   A request for an initial fraud alert submitted by LifeLock is not a "direct request of a consumer, or an individual acting on behalf of or as a personal representative of a consumer," within the meaning of 15 U.S.C. § 1681c-1(a)(1), and Experian, as a consumer reporting agency, is not required by 15 U.S.C. § 1681c-1(a)(1) to follow the procedures set forth in 15 U.S.C. § 1681c-1(a)(1)(A) and 15 U.S.C. § 1681c-1(a)(1)(B) in connection with a request for an initial fraud alert submitted by LifeLock.

(iii)   Experian, as a consumer reporting agency, is not required to follow the procedures set forth in 15 U.S.C. § 1681c-1(e) in connection with a referral of a fraud alert from another consumer reporting agency where the request for the initial fraud alert was submitted to the referring consumer reporting agency by LifeLock.

(iv)   Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting agency is not required to refer information to Experian in connection with an initial fraud alert where the request for that initial fraud alert was submitted to the consumer reporting agency by LifeLock.

(v)   LifeLock is not authorized to submit a request for an initial fraud alert to Experian or other consumer reporting agency prior to the expiration of any initial fraud alert in the file of the consumer.

(vi)   Experian, as a consumer reporting agency, is not required to

1  follow the procedures set forth by 15 U.S.C. § 1681c-1(a)(1) and

2  15 U.S.C. § 1681c-1(a)(1)(B), when a request for an initial fraud

3  alert is requested to be placed in the file of a consumer prior to

4  the expiration of any initial fraud alert in the file of that

5  consumer.

6  (vii)  Experian, as a consumer reporting agency, is not required to

7  follow the procedures set forth by 15 U.S.C. § 1681c-1(a)(1) and

8  15 U.S.C. § 1681c-1(a)(1)(B), when a request for an initial fraud

9  alert is referred from another credit reporting agency prior to the

10  expiration of any initial fraud alert in the file of that consumer.

11  (viii)  Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting

12  agency is not required to refer information to Experian in

13  connection with an initial fraud alert where the request for that

14  initial fraud alert was requested to be placed in the file of a

15  consumer prior to the expiration of any initial fraud alert in the

16  file of that consumer.

17  (ix)  Under 15 U.S.C. § 1681c-1(a)(1), a consumer or individual

18  requesting the placement of an initial fraud alert must

19  affirmatively assert a good faith suspicion that the consumer has

20  been or is about to become a victim of fraud or related crime,

21  including identity theft, at the time the request for placement of

22  that initial fraud alert is made.

23  (x)  LifeLock is not authorized to submit a request for an initial fraud

24  alert to Experian or other consumer reporting agency, where the

25  consumer has not affirmatively asserted in good faith that the

26  consumer has been or is about to become a victim of fraud or

27  related crime, including identity theft, at the time that the request

28  for the placement of that initial fraud alert is made.

1
2
3
4
5
6
7
8

(xi)   Experian, as a consumer reporting agency, is not required by 15 U.S.C. § 1681c-1(a)(1) to follow the procedures set forth in 15 U.S.C. § 1681c-1(a)(1)(A) and 15 U.S.C. § 1681c-1(a)(1)(B), in connection with a request for an initial fraud alert where the consumer has not affirmatively asserted in good faith that the consumer has been or is about to become a victim of fraud or related crime, including identity theft, at the time that the request for the placement of that initial fraud alert is made.

9
10
11
12
13
14
15

(xii)  Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting agency is not required to refer information to Experian in connection with an initial fraud alert where the consumer has not affirmatively asserted in good faith that the consumer has been or is about to become a victim of fraud or related crime, including identity theft, at the time that the request for the placement of that initial fraud alert is made.

16
17
18
19
20
21
22

(xiii) LifeLock is not authorized to submit a request for an initial fraud alert to Experian or other consumer reporting agency alert where the request for that initial fraud alert is based on the consumer's failure to retract an assertion that the consumer was or was about to become a victim of fraud or related crime, including identity theft, which was made in connection with a prior request for an initial fraud alert.

23
24
25
26
27
28

(xiv)  Experian, as a consumer reporting agency, is not required by 15 U.S.C. § 1681c-1(a)(1) to follow the procedures set forth in 15 U.S.C. § 1681c-1(a)(1)(A) and 15 U.S.C. § 1681c-1(a)(1)(B), in connection with a request for an initial fraud alert which is based on the consumer's failure to retract an assertion that the consumer was or was about to become a victim of fraud or

1    related crime, including identity theft, which was made in

2    connection with a prior request for an initial fraud alert.

3    (xv)  Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting

4    agency is not required to refer information to Experian in

5    connection with an initial fraud alert, which is based upon the

6    consumer's failure to retract an assertion that the consumer was

7    or was about to become a victim of fraud or related crime,

8    including identity theft, and which was made in connection with

9    a prior request for an initial fraud alert.

10   63.   By reason of acts by LifeLock and DOES 1-10 alleged herein, Experian

11   has suffered, and will continue to suffer, irreparable harm, for which Experian has

12   no adequate remedy at law, unless and until the conduct by LifeLock and DOES 1-

13   10 is enjoined.

14                          **SECOND CAUSE OF ACTION**

15                  **(Concealment/Suppression of Fact against LifeLock and**

16                              **DOES 1 through 10)**

17   64.   Plaintiff repeats, re-alleges and incorporates herein by reference the

18   allegations of paragraphs 1 through 63, inclusive, above.

19   65.   From on or about, June 2005, LifeLock and DOES 1-10 have

20   surreptitiously submitted requests for initial fraud alerts to Experian and other

21   consumer reporting agencies.

22   66.   In submitting requests for initial fraud alerts to Experian, and other

23   consumer reporting agencies, LifeLock and DOES 1-10 actively have concealed

24   and suppressed, and continue to conceal and suppress:

25   (i)   their corporate status and identity as the party submitting the

26   requests;

27   (ii)  that the party submitting the request for the initial fraud alert was

28   neither the consumer nor an individual acting on behalf of or as a

personal representative of a consumer;

(iii)    that they did not, at the time they surreptitiously requested the placement of initial fraud alerts, have a good faith a suspicion that the consumer on whose behalf they requested the alert had been or was about to become a victim of fraud or related crime, including identity theft;"

(iv)    that the consumers on whose behalf they had surreptitiously requested the placement of initial fraud alerts were not, at the time of the request, "assert[ing] in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft;"

(v)    that they were placing fraud alerts on behalf of consumers based on assertions regarding the consumers' belief about identity theft which did not constitute a "good faith...suspicion that the consumer has been or is about to become a victim of fraud or related crime," including a desire to proactively prevent identity theft, a generalized concern about identity theft, because an individual they knew had been a victim of identity theft, on the basis of media reports about identity theft, or a desire not to receive junk mail;

(vi)    that the additional requests for initial fraud alerts they surreptitiously submitted were not based on a concurrent, affirmative assertion by the consumer that he or she had been or was about to become a victim of fraud, and that such requests are instead based on the consumer not retracting an assertion made in connection with a prior request for an initial fraud alert;

(vii)    that their intent was to sequentially place initial fraud alert requests to create an indefinite or perpetual fraud alert.

67.   LifeLock and DOES 1-10 concealed and suppressed, and continue to conceal and suppress, these facts by, *inter alia*:

    (i)    not providing proof of its identity as the requesting party in connection with the requests for initial fraud alerts it placed;

    (ii)    using a phone number other than those registered to LifeLock to place calls to Experian's toll-free number;

    (iii)    employing third parties and foreign phone banks to place requests for initial fraud alerts;

    (iv)    changing phones and/or numbers used to place requests for initial fraud alerts after prior phones and phone numbers had been detected and attempted to be blocked by Experian;

    (v)    by responding affirmatively, inputting information in response to, and continuing to use the automated system, after automated prompts that ask:  (i) "if you believe your credit information is being used fraudulently, press 3"; (ii) "to add an alert to your credit report through our automated system, press 2"; (iii) "if you suspect you are a victim of fraud and want to add a temporary initial fraud security alert to your account, press 1"; and (iv) the caller to enter personal information, such as "enter your social security number," "enter your 5 digit ZIP code now," and "enter the numeric portion of your address now;"

    (vi)    completing the request for placement of initial fraud alerts over the phone, rather than submitting documents establishing that the requesting party was a bona fide personal representative of the consumer as prompted by the automated system;

    (vii)    submitting requests for initial fraud alerts to other credit reporting agencies, thereby requiring the other agencies to refer the alerts to Experian and laundering the identity of the party

1    making the initial request.

2    68.    LifeLock and DOES 1-10 made the non-disclosures, concealments and

3    suppressions of fact alleged herein with the intent to induce Experian (and the other

4    consumer reporting agencies) to act in reliance thereon, including placing fraud

5    alerts in the files of the customers of LifeLock and DOES 1-10, providing free

6    credit reports to customers of LifeLock and DOES 1-10, and to refer the requests to

7    the other consumer reporting agencies, and with the intention of depriving Experian

8    of property or otherwise causing injury.

9    69.    At the time that LifeLock and DOES 1-10 made the failures to disclose

10   and suppression of fact herein alleged, Experian was unaware of these facts, and

11   would not have acted as it did if it had known the undisclosed, concealed or

12   suppressed facts.

13   70.    As a proximate result of LifeLock's and DOES 1-10 failure to disclose,

14   concealment and suppression of fact, Experian has incurred, and continues to incur,

15   costs and has suffered, and continues to suffer, damages.

16   71.    In doing the things aforementioned, LifeLock and DOES 1-10 have

17   been guilty of malice, oppression, and fraud, and Experian is, therefore, entitled to

18   recover punitive damages.

19   72.    By reason of acts by LifeLock and DOES 1-10 alleged herein, Experian

20   has suffered, and will continue to suffer, irreparable harm, for which Experian has

21   no adequate remedy at law, unless and until the conduct by LifeLock and DOES 1-

22   10 is enjoined.

23   ### THIRD CAUSE OF ACTION

24   **(Intentional Misrepresentation against LifeLock and**

25   **DOES 1 through 10)**

26   73.    Plaintiff repeats, re-alleges and incorporates herein by reference the

27   allegations of paragraphs 1 through 72, inclusive, above.

28

LAI-2930464v1                                     - 31 -

74. From on or about, June 2005, during the course of requesting the placement of thousands of initial fraud alerts on consumers' files through the toll-free number maintained by Experian, LifeLock and DOES 1-10 misrepresented: (i) the identity of the parties requesting the placement of the fraud alerts; (ii) that they were individuals seeking placement of a fraud alert in their own files; (iii) that they were individuals with a good faith belief that they had been the victim of fraud; and (iv) that they had a good faith suspicion that the consumer had been or was about to become a victim of fraud or related crime, including identity theft. Experian did not discover LifeLock's wrongful conduct until 2007.

75. LifeLock and DOES 1-10 made these misrepresentations by way of responding affirmatively to, or entering information in response to, the prompts by Experian's automated telephone system for the placement of fraud alerts by individuals. Although the precise wording of the prompts has varied over time, the substance has not. These prompts require, among other things, the caller to respond affirmatively to statements such as: (i) "if you believe your credit information is being used fraudulently, press 3"; (ii) "to add an alert to your credit report through our automated system, press 2"; and (iii) "if you suspect you are a victim of fraud and want to add a temporary initial fraud security alert to your account, press 1." The prompts also ask the caller to enter personal information, such as "enter your social security number," "enter your 5 digit ZIP code now," and "enter the numeric portion of your address now."

76. The representations of LifeLock and DOES 1-10 in response to these prompts were false. In fact, LifeLock and DOES 1-10: (i) did not believe that their credit information was being used fraudulently or that they were a victim of fraud; (ii) were not seeking to add an alert to their credit reports; (iii) were not seeking a temporary alert, but were seeking to craft an indefinite or perpetual alert; and (iv) entered social security numbers, ZIP codes or addresses, which were not their own.

77.   Further, LifeLock and DOES 1-10 did not have a good faith suspicion that the consumer on whose behalf they were surreptitiously requesting a fraud alert had been or was about to become a victim of fraud or related crime, including identity theft.  LifeLock and DOES 1-10 knew that, in many cases, the consumers on whose behalf they were surreptitiously requesting the placement of initial fraud alerts, were instead acting on desires to proactively prevent identity theft, generalized concerns about identity theft, the suspected victimization of a person other than the consumer, on the basis of media reports about identity theft, or even the desire not to receive junk mail.

78.   Further, many of the customers of LifeLock and DOES 1-10 were not affirmatively asserting that, at the time that LifeLock and DOES 1-10 made the request for the placement of a fraud alert, they had been or were about to become a victim of fraud.  Instead, the customers simply had failed to retract assertions made months or years previously in connection with a prior request for an initial fraud alert.

79.   Upon information and belief, LifeLock and DOES 1-10 have made similar misrepresentations in the course of placing alerts through the automated systems maintained by other consumer reporting agencies, including Equifax and TransUnion.

80.   At the time they made these misrepresentations, LifeLock and DOES 1-10 knew that these representations were false.

81.   LifeLock and DOES 1-10 made, and continue to make, the representations herein alleged with the intention of inducing Experian, Trans Union and Equifax to place fraud alerts in the credit files of the customers of LifeLock and DOES 1-10, send notice to consumers that they are entitled to a free credit report, send a free credit report to customers who request one and "refer the information regarding the fraud alert to each of the credit reporting agencies," and, once

1   referred, treat the referral "as though the agency received the request from the

2   consumer directly."

3       82.   Experian was unaware of the falsity of the misrepresentations made by

4   LifeLock and DOES 1-10, and acted in justifiable reliance upon those

5   misrepresentations, in that Experian, *inter alia,* placed initial fraud alerts in the files

6   of customers of LifeLock and DOES 1-10, sent notice to consumers that they are

7   entitled to a free credit report, and generated and mailed free credit reports to those

8   customers who requested such reports.

9       83.   Experian was unaware of the falsity of the misrepresentations made by

10  LifeLock and DOES 1-10 to Equifax and TransUnion, and acted in justifiable

11  reliance upon those representations, in that Experian was required to place fraud

12  alerts on consumers' files which were referred to Experian from Trans Union

13  and Equifax.

14      84.   LifeLock and DOES 1-10 made the intentional misrepresentations

15  herein alleged with the intention of depriving Experian of property or otherwise

16  causing injury.

17      85.   As a proximate result of the intentional misrepresentations of LifeLock

18  and DOES 1-10, Experian has incurred, and continues to incur, costs and has

19  suffered, and continues to suffer, damages.

20      86.   In doing the things aforementioned, LifeLock and DOES 1-10 were

21  guilty of malice, oppression, and fraud, and Experian is, therefore, entitled to

22  recover punitive damages.

23      87.   By reason of acts by LifeLock and DOES 1-10 alleged herein, Experian

24  has suffered, and will continue to suffer, irreparable harm, for which Experian has

25  no adequate remedy at law, unless and until the conduct by LifeLock and DOES 1-

26  10 is enjoined.

27

28

LAI-2930464v1                                    - 34 -

**FOURTH CAUSE OF ACTION**

**(Negligent Misrepresentation against LifeLock and**

**DOES 1 through 10)**

88.   Experian repeats, realleges, and incorporates by reference the allegations contained in Paragraph 1 through 87, inclusive.

89.   At the time LifeLock and DOES 1-10 made the representations herein alleged, LifeLock and DOES 1-10 did not have reasonable ground for believing that those representations were true.

90.   LifeLock and DOES 1-10 made, and continue to make, the misrepresentations herein alleged with the intention of inducing Experian, TransUnion and Equifax to place fraud alerts in the credit files of the customers of LifeLock and DOES 1-10, send those costumers a free credit report and "refer the information regarding the fraud alert to each of the credit reporting agencies," and, once referred, treat the referral "as though the agency received the request from the consumer directly."

91.   Experian was unaware of the falsity of the representations made by LifeLock and DOES 1-10, and acted in justifiable reliance upon the truth of those representations, in that Experian, *inter alia,* placed initial fraud alerts in the files of customers of LifeLock and DOES 1-10, sent notice to consumers that they are entitled to a free credit report, and generated and mailed free credit reports to those customers who requested such reports.

92.   Experian was unaware of the falsity of the representations made by LifeLock and DOES 1-10 to Equifax and TransUnion, and acted in justifiable reliance upon those representations, in that Experian was required to place fraud alerts on consumers' files which were referred to Experian from Trans Union and Equifax.

93.   As a result of Experian's reliance upon the truth of the representations of LifeLock and DOES 1-10, and as a direct, proximate and foreseeable result of

1   the above-described conduct, Experian sustained compensatory, incidental and

2   consequential damages in an amount to be proven at trial.

3       94.    By reason of the acts by LifeLock and DOES 1-10 alleged herein,

4   Experian has suffered, and will continue to suffer, irreparable harm, for which

5   Experian has no adequate remedy at law, unless and until the conduct by LifeLock

6   and DOES 1-10 is enjoined.

7                        **FIFTH CAUSE OF ACTION**

8                    **(Lanham Act against LifeLock and**

9                       **DOES 1 through 10)**

10      95.    Experian repeats, realleges, and incorporates by reference the

11  allegations contained in Paragraph 1 through 94, inclusive.

12      96.    Since in or about June 2005, the website, television commercials and

13  radio advertisements of LifeLock and DOES 1-10 are commercial

14  advertisements/promotional materials that have been placed into interstate

15  commerce by LifeLock and DOES 1-10 in connection with the sale and/or

16  marketing of its fraud alert placement service.

17      97.    Many of the material descriptions and/or representations of fact

18  contained in its advertisements are false and/or misleading, and therefore

19  misrepresent the nature or qualities of goods/commercial activities of LifeLock and

20  DOES 1-10. Such representations are false and/or misleading in that they:

21              (i)     misrepresent, and create the overall net impression, that

22                      LifeLock can place fraud alerts on behalf of consumers, when

23                      the FCRA does not require credit reporting agencies to honor

24                      requests made by corporations;

25              (ii)    misrepresent, and create the overall net impression that everyone

26                      is entitled to receive a fraud alert, when the FCRA only allows

27                      individuals who "assert[] in good faith a suspicion that the

28

LAI-2930464v1                           - 36 -

consumer has been or is about to become a victim of fraud or
related crime" to place an initial fraud alert on their credit files;

(iii)   misrepresent, and create the overall net impression, that
consumers are entitled to receive automatic renewals of fraud
alerts without an assertion of a good faith suspicion that the
consumer has been or is about to become a victim of fraud or
related crime;

(iv)   misrepresent, and create the overall net impression, that
consumers are entitled to receive automatic renewals of fraud
alerts without disclosing that the FCRA requires consumers to
provide an identity theft report in order to receive
extended alerts;

(v)   misrepresent, and create the overall net impression, that
LifeLock can protect against all types of fraud including
computer hacking, and accessing a bank account using stolen
passwords when fraud alerts are only effective against fraud that
requires accessing a credit report;

(vi)   misrepresent, and create the overall net impression, that
LifeLock "locks" a credit file of a consumer, when, in fact, it
only requests the placement of a fraud alert in the credit file, and
does not restrict access to the credit file in any way;

(vii)   misrepresent, and create the overall net impression that fraud
alerts must be purchased through LifeLock, and that the fraud
alerts placed by LifeLock are different or more effective than
fraud alerts that consumers can place themselves directly through
the credit bureaus;

(viii)   misrepresent, and create the overall net impression, that
consumers cannot obtain fraud alerts effectively or easily from

1                any other source, and that obtaining fraud alerts without

2                subscribing to LifeLock is a time-consuming, difficult process,

3                when in fact it is easier to obtain a fraud alert directly with the

4                credit bureaus than it is with LifeLock;

5      (ix)   misrepresent, and create the overall net impression, that

6                LifeLock is allowed to place fraud alerts directly with Experian,

7                when in fact Experian has attempted to block the placement of

8                fraud alerts by LifeLock, and LifeLock disguises its identity and

9                fraudulently misrepresents to Experian that LifeLock is

10              the consumer;

11      (x)   misrepresent, and create the overall net impression, that

12              consumers will receive a telephone call when the consumers'

13              personal information is used to apply for new credit, when there

14              is no requirement under the FCRA that initial fraud alerts require

15              creditors to place a telephone call to consumers.

16      98.    The above-described acts of LifeLock and DOES 1-10 constitute false

17 advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

18      99.    The above-described acts of LifeLock and DOES 1-10 actually

19 deceived or have the tendency to deceive a substantial segment of consumers who

20 see or hear such representations.

21      100.   The above-described acts of LifeLock and DOES 1-10 are material, in

22 that they are likely to influence a consumer's purchasing decision.

23      101.   As a result of the acts of LifeLock and DOES 1-10, Experian, as a

24 competitor of LifeLock and DOES 1-10, has suffered, and will continue to suffer,

25 damage to its business reputation and goodwill and the loss of sales and profits.

26 Such damages include:

27          (i)    Damage to Experian's reputation regarding its process for

28              allowing consumers to place fraud alerts in consumers' Experian

1  credit file;

2      (ii)   Losses from reduced orders for credit reports by consumers to

3             whom Experian is required to provide a free credit report upon

4             receipt of a request for a fraud alert;

5      (iii)   Losses from reduced orders by consumers for credit freezes

6             placed by Experian on consumers' credit files.

7      102.   Additionally, Experian has incurred, and will continue to incur,

8  liability for costs and attorney's fees.

9      103.   Upon information and belief, the above-described acts by LifeLock

10  and DOES 1-10 were willful and have been engaged in knowing them to be

11  deceptive such as to warrant the trebling of damages in order to provide just

12  compensation.

13      104.   Upon information and belief, LifeLock and DOES 1-10 have unfairly

14  profited from the actions alleged herein, and will continue to be unjustly enriched

15  unless and until such conduct is enjoined.

16      105.   By reason of acts by LifeLock and DOES 1-10 alleged herein,

17  Experian has suffered, and will continue to suffer, irreparable harm, for which

18  Experian has no adequate remedy at law, unless and until the conduct by LifeLock

19  and DOES 1-10 is enjoined.

20                      **SIXTH CAUSE OF ACTION**

21  **(California Business and Professions Code § 17500 against LifeLock and**

22                     **DOES 1 through 10)**

23      106.   Experian repeats, realleges, and incorporates by reference, the

24  allegations contained in Paragraph 1 through 105, inclusive.

25      107.   From on or about, June 2005, LifeLock and DOES 1-10 have engaged

26  in website, television, radio, and print advertising to the public offering identity

27  theft protection.  Such advertisements are false and/or misleading representations in

28  that they:

(i)   misrepresent, and create the overall net impression, that LifeLock can place fraud alerts on behalf of consumers, when the FCRA does not require credit reporting agencies to honor requests made by corporations;

(ii)   misrepresent, and create the overall net impression that everyone is entitled to receive a fraud alert, when the FCRA only allows individuals who "assert[] in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime" to place an initial fraud alert on their credit files;

(iii)   misrepresent, and create the overall net impression, that consumers are entitled to receive automatic renewals of fraud alerts without an assertion of a good faith suspicion that the consumer has been or is about to become a victim of fraud or related crime;

(iv)   misrepresent, and create the overall net impression, that consumers are entitled to receive automatic renewals of fraud alerts without disclosing that the FCRA requires consumers to provide an identity theft report in order to receive extended alerts;

(v)   misrepresent, and create the overall net impression, that LifeLock can protect against all types of fraud including computer hacking, and accessing a bank account using stolen passwords when fraud alerts are only effective against fraud that requires accessing a credit report;

(vi)   misrepresent, and create the overall net impression, that LifeLock "locks" a credit file of a consumer, when, in fact, it only requests the placement of a fraud alert in the credit file, and does not restrict access to the credit file in any way;

1    (vii)   misrepresent, and create the overall net impression that fraud
2            alerts must be purchased through LifeLock, and that the fraud
3            alerts placed by LifeLock are different or more effective than
4            fraud alerts that consumers can place themselves directly through
5            the credit bureaus;

6    (viii)  misrepresent, and create the overall net impression, that
7            consumers cannot obtain fraud alerts effectively or easily from
8            any other source, and that obtaining fraud alerts without
9            subscribing to LifeLock is a time-consuming, difficult process,
10           when in fact it is easier to obtain a fraud alert directly with the
11           credit bureaus than it is with LifeLock;

12   (ix)    misrepresent, and create the overall net impression, that
13           LifeLock is allowed to place fraud alerts directly with Experian,
14           when in fact Experian has attempted to block the placement of
15           fraud alerts by LifeLock, and LifeLock disguises its identity and
16           fraudulently misrepresents to Experian that LifeLock is
17           the consumer;

18   (x)     misrepresent, and create the overall net impression, that
19           consumers will receive a telephone call when the consumers'
20           personal information is used to apply for new credit, when there
21           is no requirement under the FCRA that initial fraud alerts require
22           creditors to place a telephone call to consumers.

23       108.   LifeLock and DOES 1-10 engaged in the advertising herein alleged
24   with the intent to induce members of the public to believe that they had the
25   authority to place fraud alert requests on their behalf and/or to induce Experian and
26   members of the public to believe that it had the authority to place fraud alert
27   requests on behalf of its subscribers.

28

109.    Experian has suffered injury in fact and has lost money and property as a result of the false advertising by LifeLock and DOES 1-10.

110.    In making or disseminating the statements herein alleged, LifeLock and DOES 1-10 knew or with the exercise of reasonable care should have known that the statements were untrue/false and/or misleading and so acted in violation of Sections 17500 *et seq.* of the Business and Professions Code.

111.    In making or disseminating the statements herein alleged, LifeLock and DOES 1-10 did not intend to sell the products as advertised.

112.    Unless restrained by this Court, LifeLock and DOES 1-10 will continue to engage in untrue/false and misleading advertising, as alleged above, in violation of Section 17500 *et seq.* of the Business and Professions Code, thus tending to render judgment in the instant action ineffectual.  Experian has no adequate remedy at law in that LifeLock and DOES 1-10 will continue to engage in untrue and misleading advertising, as alleged above, in violation of Section 17500 *et seq.* of the Business and Professions Code, thus engendering a multiplicity of judicial proceedings.

## SEVENTH CAUSE OF ACTION

**(California Business and Professions Code § 17200 against LifeLock and DOES 1 through 10)**

113.    Experian repeats, realleges, and incorporates by reference, the allegations contained in Paragraph 1 through 112, inclusive.

114.    From on or about, June 2005, LifeLock and DOES 1-10 engaged in that acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling its LifeLock product to consumers in California, and throughout the United States.

115.    LifeLock and DOES 1-10 have violated California Business and Professions Code § 17200 *et seq.* by engaging in unlawful, unfair and fraudulent conduct including, but not limited, to:

(i)  misrepresenting, and creating the overall net impression, that LifeLock can place fraud alerts on behalf of consumers, when the FCRA does not require credit reporting agencies to honor requests made by corporations;

(ii)  misrepresenting, and creating the overall net impression that everyone is entitled to receive a fraud alert, when the FCRA only allows individuals who "assert[] in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime" to place an initial fraud alert on their credit files;

(iii)  misrepresenting, and creating the overall net impression, that consumers are entitled to receive automatic renewals of fraud alerts without an assertion of a good faith suspicion that the consumer has been or is about to become a victim of fraud or related crime;

(iv)  misrepresenting, and creating the overall net impression, that consumers are entitled to receive automatic renewals of fraud alerts without disclosing that the FCRA requires consumers to provide an identity theft report in order to receive extended alerts;

(v)  misrepresenting, and creating the overall net impression, that LifeLock can protect against all types of fraud including computer hacking, and accessing a bank account using stolen passwords when fraud alerts are only effective against fraud that requires accessing a credit report;

(vi)  misrepresenting, and creating the overall net impression, that LifeLock "locks" a credit file of a consumer, when, in fact, it only requests the placement of a fraud alert in the credit file, and does not restrict access to the credit file in any way;

(vii) misrepresenting, and creating the overall net impression that fraud alerts must be purchased through LifeLock, and that the fraud alerts placed by LifeLock are different or more effective than fraud alerts that consumers can place themselves directly through the credit bureaus;

(viii) misrepresenting, and creating the overall net impression, that consumers cannot obtain fraud alerts effectively or easily from any other source, and that obtaining fraud alerts without subscribing to LifeLock is a time-consuming, difficult process, when in fact it is easier to obtain a fraud alert directly with the credit bureaus than it is with LifeLock;

(ix) misrepresenting, and creating the overall net impression, that LifeLock is allowed to place fraud alerts directly with Experian, when in fact Experian has attempted to block the placement of fraud alerts by LifeLock, and LifeLock disguises its identity and fraudulently misrepresents to Experian that LifeLock is the consumer;

(x) misrepresenting, and creating the overall net impression, that consumers will receive a telephone call when the consumers' personal information is used to apply for new credit, when there is no requirement under the FCRA that initial fraud alerts require creditors to place a telephone call to consumers.

116.   In doing so, LifeLock and DOES 1-10 have:

(i) violated California Civil Code § 1770(a)(5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(ii) violated California Civil Code § 1770(a)(7) by representing that goods or services are of a particular standard, quality, or grade,

1   or that goods are of a particular style or model, if they are

2   of another;

3   (iii)  violated California Civil Code § 1770(a)(8) by disparaging the

4   goods, services, or business of another by false or misleading

5   representations of fact;

6   (iv)  violated California Civil Code § 1770(a)(9) by advertising goods

7   or services with intent not to sell them as advertised;

8   (v)  violated California Civil Code § 1770(a)(14) by representing that

9   a transaction confers or involves rights, remedies, or obligations

10   which it does not have or involve, or which are prohibited

11   by law;

12   (vi)  violated 18 U.S.C. § 1343 by transmission of the

13   misrepresentations identified in Paragraphs 38 through 42 by

14   means of telephone or other interstate wire in furtherance of a

15   scheme to defraud Experian and the other credit reporting

16   agencies;

17   (vii)  violated California's False Advertising Law, California Business

18   and Professions Code § 17500;

19   (viii)  violated the Lanham Act, 15 U.S.C. § 1125(a).

20   117.   LifeLock and DOES 1-10 have violated California Business and

21   Professions Code § 17200 *et seq.* by engaging in unlawful, unfair and fraudulent

22   conduct including, but not limited to, making the misrepresentations to Experian

23   and other consumer reporting agencies identified in paragraphs 38 through 42

24   above.

25   118.   In doing so, LifeLock and DOES 1-10 have:

26   (i)  violated California Civil Code § 1770(a)(2) by misrepresenting

27   the source, sponsorship, approval or certification of goods

28   or services;

LAI-2930464v1                                          - 45 -

(ii)   violated California Civil Code § 1770(a)(3) by misrepresenting the affiliation, connection, or association with, or certification by, another;

(iii)   violated of 18 U.S.C. § 1343 by transmission of the misrepresentations identified in Paragraphs 48 through 58 by means of telephone or other interstate wire in furtherance of a scheme to defraud Experian and the other credit reporting agencies;

(iv)   violated the Lanham Act, 15 U.S.C. § 1125(a).

119.   The acts and practices alleged herein constitute unlawful, unfair and/or deceptive business practices as set forth in Business and Professions Code § 17200 *et seq.*

120.   LifeLock and DOES 1-10 continue to engage in such unlawful, unfair and/or deceptive business practices as identified herein to the present day, including in its dealings with Experian, and there is a substantial risk that the wrongful acts will continue in the future, thus warranting (and necessitating) injunctive relief.

121.   Experian has suffered injury in fact and has lost money and property as a result of the unfair competition by LifeLock and DOES 1-10.

122.   Pursuant to California Business and Professions Code Section 17203, Experian is entitled to equitable relief, including restitution of all profits LifeLock and DOES 1-10 have retained as a consequence of the unlawful business practices, in which Experian has an interest and to which Experian is entitled as a result of the unlawful and unfair business practices.

123.   Experian is also entitled to injunctive relief preliminary and permanently restraining LifeLock from continuing the unlawful and unfair business practices described herein.

**EIGHTH CAUSE OF ACTION**

**(Unjust Enrichment/Restitution against LifeLock and**

**DOES 1 through 10)**

124.   Experian repeats, realleges, and incorporates by reference, the allegations contained in Paragraph 1 through 123, inclusive.

125.   LifeLock and DOES 1-10 have been unjustly enriched at Experian's expense by gaming the FCRA, defrauding Experian and consumers, and laundering fraud alerts through the other credit reporting agencies to Experian's harm and detriment and to LifeLock's benefit.

126.   LifeLock and DOES 1-10 neither are "consumers" nor "individual[s] acting on behalf of or as a personal representative of a consumer," and are not authorized and/or permitted by the FCRA to submit fraud alerts to Experian directly or to cause fraud alerts to be referred to Experian by submitting requests for fraud alerts to other consumer reporting agencies.  LifeLock and DOES 1-10 have done so, and continue to do so, without statutory authorization or permission, while concealing, misrepresenting and laundering both their identities as the party requesting the placement of the fraud alert and their corporate status from Experian and other consumer reporting agencies.

127.   LifeLock and DOES 1-10 have submitted, and continue to submit, requests for initial fraud alerts without possessing a good faith suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft.  In fact, LifeLock and DOES 1-10 have mislead their customers into believing that they are eligible for fraud alerts on the basis of a desire to proactively prevent identity theft, if a friend or family member has been a victim of identity theft, or on the basis of media reports about identity theft.

128.   LifeLock and DOES 1-10 sequentially submit requests that additional "initial" fraud alerts be placed in a consumer's file in order to indefinitely extend the lifespan of the fraud alert.  The FCRA does not authorize and/or permit

1  LifeLock and DOES 1-10 to request the repeated, sequential placement of initial
2  alerts based on the same set of circumstances.  The FCRA requires that extended
3  alerts be requested on the basis of an identity theft report, rather than the suspicion
4  that the consumer has been or is about to become a victim of fraud or related crime,
5  including identity theft.  The FCRA does not authorize perpetual or indefinite
6  fraud alerts.

7      129.   LifeLock and DOES 1-10 do not obtain their customers' affirmative
8  assertions that, concurrent with the request for additional initial fraud alerts, the
9  consumer has a good faith suspicion that the consumer has been or is about to
10  become a victim of fraud or related crime, including identity theft.  Instead,
11  LifeLock and DOES 1-10 request additional fraud alerts whenever their customers
12  do not notify LifeLock that they no longer hold such a suspicion.

13      130.   LifeLock and DOES 1-10 have solicited consumers with misleading
14  and false advertising regarding LifeLock's authority to place initial fraud alerts on
15  consumers' files, consumers' eligibility for initial fraud alerts, the nature and effect
16  of initial fraud alerts, and the ease in which a customer may request an initial fraud
17  alert directly from the consumer reporting agencies for free.

18      131.   LifeLock and DOES 1-10 have been unjustly enriched by, and
19  improperly benefited from, its conduct in that:  (i) the FCRA contemplates that
20  fraud alerts will be placed without charge to the requesting consumer, but LifeLock
21  and DOES 1-10 have charged, received and retained monies paid by consumers for
22  the placement of fraud alerts; (ii) LifeLock and DOES 1-10 are profiting at the
23  expense of Experian, who bears all of the costs and burdens of placing and
24  maintaining the fraud alert in the consumer's file, referring fraud alerts to other
25  consumer reporting agencies, and providing the consumer with notices and the free
26  credit report to consumers who request such a report; (iii) LifeLock and DOES 1-10
27  are profiting from services and work it has wrongly induced Experian to perform,
28  and (iv) LifeLock and DOES 1-10 are profiting from the placement of fraud alerts

1  for consumers who are not eligible for such alerts, and the provision of free credit

2  reports to consumers who are not eligible for such reports.

3      132.   It would be unjust and unconscionable to permit LifeLock and DOES

4  1-10 to be enriched at the expense of Experian and to retain the benefits that were

5  wrongfully obtained through Experian.

6      133.   LifeLock and DOES 1-10 have improperly benefited from fraudulent

7  activities, and thus Experian seeks restitution from LifeLock and DOES 1-10 in the

8  amount LifeLock and DOES 1-10 have been unjustly enriched and an order

9  disgorging all profits, benefits and other compensation obtained by LifeLock and

10  DOES 1-10.

11                    **NINTH CAUSE OF ACTION**

12                  **(Quantum Meruit against LifeLock and**

13                       **DOES 1 through 10)**

14      134.   Experian repeats, realleges, and incorporates by reference, the

15  allegations contained in Paragraph 1 through 133, inclusive.

16      135.   Experian provides services at the request of LifeLock and DOES 1-10

17  for which LifeLock charges its customers a monthly fee, including implementation

18  of fraud alerts and the provision of free credit reports.  Experian has received no

19  compensation from LifeLock and DOES 1-10 for providing these services, and

20  LifeLock and DOES 1-10 have offered none.

21      136.   LifeLock and DOES 1-10 have benefited from the services they have

22  wrongfully obtained from Experian.

23      137.   Experian is entitled to compensation in an amount equal to the value

24  of the services obtained from it by LifeLock and DOES 1-10.

25                            **PRAYER**

26      WHEREFORE, Plaintiff prays judgment against Defendants, and each of

27  them, as follows:

28

LAI-2930464v1                        - 49 -

## FIRST CAUSE OF ACTION

1.   For a declaration that:

    (i)   LifeLock neither is a "consumer" nor "an individual" "acting on behalf of or as a personal representative of a consumer" within the meaning of 15 U.S.C. § 1681c-1(a)(1), and is not authorized to submit requests for initial fraud alerts to a consumer reporting agency under 15 U.S.C. § 1681c-1.

    (ii)   A request for an initial fraud alert submitted by LifeLock is not a "direct request of a consumer, or an individual acting on behalf of or as a personal representative of a consumer," within the meaning of 15 U.S.C. § 1681c-1(a)(1), and Experian, as a consumer reporting agency, is not required by 15 U.S.C. § 1681c-1(a)(1) to follow the procedures set forth in 15 U.S.C. § 1681c-1(a)(1)(A) and 15 U.S.C. § 1681c-1(a)(1)(B) in connection with a request for an initial fraud alert submitted by LifeLock.

    (iii)   Experian, as a consumer reporting agency, is not required to follow the procedures set forth in 15 U.S.C. § 1681c-1(e) in connection with a referral of a fraud alert from another consumer reporting agency where the request for the initial fraud alert was submitted to the referring consumer reporting agency by LifeLock.

    (iv)   Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting agency is not required to refer information to Experian in connection with an initial fraud alert where the request for that initial fraud alert was submitted to the consumer reporting agency by LifeLock.

    (v)   LifeLock is not authorized to submit a request for an initial fraud

alert to Experian or other consumer reporting agency prior to the expiration of any initial fraud alert in the file of the consumer.

(vi)     Experian, as a consumer reporting agency, is not required to follow the procedures set forth by 15 U.S.C. § 1681c-1(a)(1) and 15 U.S.C. § 1681c-1(a)(1)(B), when a request for an initial fraud alert is requested to be placed in the file of a consumer prior to the expiration of any initial fraud alert in the file of that consumer.

(vii)    Experian, as a consumer reporting agency, is not required to follow the procedures set forth by 15 U.S.C. § 1681c-1(a)(1) and 15 U.S.C. § 1681c-1(a)(1)(B), when a request for an initial fraud alert is referred from another credit reporting agency prior to the expiration of any initial fraud alert in the file of that consumer.

(viii)   Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting agency is not required to refer information to Experian in connection with an initial fraud alert where the request for that initial fraud alert was requested to be placed in the file of a consumer prior to the expiration of any initial fraud alert in the file of that consumer.

(ix)     Under 15 U.S.C. § 1681c-1(a)(1), a consumer or individual requesting the placement of an initial fraud alert must affirmatively assert a good faith suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft, at the time the request for placement of that initial  fraud alert is made.

(x)      LifeLock is not authorized to submit a request for an initial fraud alert to Experian or other consumer reporting agency, where the consumer has not affirmatively asserted in good faith that the

1    consumer has been or is about to become a victim of fraud or

2    related crime, including identity theft, at the time that the request

3    for the placement of that initial fraud alert is made.

4    (xi)   Experian, as a consumer reporting agency, is not required by

5    15 U.S.C. § 1681c-1(a)(1) to follow the procedures set forth in

6    15 U.S.C. § 1681c-1(a)(1)(A) and 15 U.S.C. § 1681c-1(a)(1)(B),

7    in connection with a request for an initial fraud alert where the

8    consumer has not affirmatively asserted in good faith that the

9    consumer has been or is about to become a victim of fraud or

10   related crime, including identity theft, at the time that the request

11   for the placement of that initial fraud alert is made.

12   (xii)  Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting

13   agency is not required to refer information to Experian in

14   connection with an initial fraud alert where the consumer has not

15   affirmatively asserted in good faith that the consumer has been

16   or is about to become a victim of fraud or related crime,

17   including identity theft, at the time that the request for the

18   placement of that initial fraud alert is made.

19   (xiii) LifeLock is not authorized to submit a request for an initial fraud

20   alert to Experian or other consumer reporting agency alert where

21   the request for that initial fraud alert is based on the consumer's

22   failure to retract an assertion that the consumer was or was about

23   to become a victim of fraud or related crime, including identity

24   theft, which was made in connection with a prior request for an

25   initial fraud alert.

26   (xiv)  Experian, as a consumer reporting agency, is not required by

27   15 U.S.C. § 1681c-1(a)(1) to follow the procedures set forth in

28   15 U.S.C. § 1681c-1(a)(1)(A) and 15 U.S.C. § 1681c-1(a)(1)(B),

1  in connection with a request for an initial fraud alert which is

2  based on the consumer's failure to retract an assertion that the

3  consumer was or was about to become a victim of fraud or

4  related crime, including identity theft, which was made in

5  connection with a prior request for an initial fraud alert.

6  (xv)  Under 15 U.S.C. § 1681c-1(a)(1)(B), a consumer reporting

7  agency is not required to refer information to Experian in

8  connection with an initial fraud alert, which is based upon the

9  consumer's failure to retract an assertion that the consumer was

10  or was about to become a victim of fraud or related crime,

11  including identity theft, and which was made in connection with

12  a prior request for an initial fraud alert.

13  2.  For injunctive relief, enjoining Defendants from submitting requests

14  for fraud alerts to Experian, Trans Union and Equifax;

15  3.  For costs of suit herein incurred; and

16  4.  For such other and further relief as the Court may deem proper.

17  <u>SECOND CAUSE OF ACTION</u>

18  1.  For actual damages in an amount to be proven at trial;

19  2.  For restitution to the extent permitted by law;

20  3.  For injunctive relief, enjoining Defendants from submitting requests

21  for fraud alerts to Experian, Trans Union and Equifax;

22  4.  For costs of suit herein incurred; and

23  5.  For such other and further relief as the Court may deem proper.

24  <u>THIRD CAUSE OF ACTION</u>

25  1.  For actual damages in an amount to be proven at trial;

26  2.  For restitution to the extent permitted by law;

27  3.  For injunctive relief, enjoining Defendants from submitting requests

28  for fraud alerts to Experian, Trans Union and Equifax;

1     4.    For punitive damage;

2     5.    For costs of suit herein incurred; and

3     6.    For such other and further relief as the Court may deem proper.

4                   FOURTH CAUSE OF ACTION

5     1.    For actual damages in an amount to be proven at trial;

6     2.    For restitution to the extent permitted by law;

7     3.    For injunctive relief, enjoining Defendants from submitting requests

8           for fraud alerts to Experian, Trans Union and Equifax;

9     4.    For costs of suit herein incurred; and

10    5.    For such other and further relief as the Court may deem proper.

11                  FIFTH CAUSE OF ACTION

12    1.    For actual damages in an amount to be proven at trial;

13    2.    For restitution to the extent permitted by law;

14    3.    For injunctive relief, enjoining Defendants from placing and/or

15           making, or authorizing the placing or making of, any advertisements

16           and/or representations which contain false and misleading statements

17           regarding Defendants' ability and authority to place fraud alerts, the

18           need for a good faith belief in placing fraud alerts, the availability of

19           fraud alerts as a proactive, preventative measure, that consumers are

20           entitled to automatic renewals of fraud alerts, the efficacy of fraud

21           alerts against all types of fraud, that fraud alerts prevent access to credit

22           reports, the difficulty of obtaining fraud alerts through credit bureaus,

23           that LifeLock places fraud alerts directly with Experian, that

24           consumers can only receive the protection afforded by fraud alerts by

25           purchasing LifeLock's service, that creditors will call consumers who

26           have a fraud alert on their file, the source of the credit report provided

27           by LifeLock, and, any other advertising false or misleading advertising

28           regarding fraud alerts, and enjoining the use of the LifeLock name.

1    4.    For punitive damages;

2    5.    For costs of suit herein incurred; and

3    6.    For such other and further relief as the Court may deem proper.

4                          SIXTH CAUSE OF ACTION

5    1.    For restitution to the extent permitted by law;

6    2.    For disgorgement of profits;

7    3.    For injunctive relief, enjoining Defendants from placing and/or

8          making, or authorizing the placing or making of, any advertisements

9          and/or representations which contain false and misleading statements

10         regarding Defendants' ability and authority to place fraud alerts, the

11         need for a good faith belief in placing fraud alerts, the availability of

12         fraud alerts as a proactive, preventative measure, that consumers are

13         entitled to automatic renewals of fraud alerts, the efficacy of fraud

14         alerts against all types of fraud, that fraud alerts prevent access to credit

15         reports, the difficulty of obtaining fraud alerts through credit bureaus,

16         that LifeLock places fraud alerts directly with Experian, that

17         consumers can only receive the protection afforded by fraud alerts by

18         purchasing LifeLock's service, that creditors will call consumers who

19         have a fraud alert on their file, the source of the credit report provided

20         by LifeLock, and, any other advertising false or misleading advertising

21         regarding fraud alerts, and enjoining the use of the LifeLock name.

22   4.    For costs of suit herein incurred; and

23   5.    For such other and further relief as the Court may deem proper.

24                        SEVENTH CAUSE OF ACTION

25   1.    For restitution to the extent permitted by law;

26   2.    For disgorgement of profits;

27   3.    For injunctive relief, enjoining Defendants from submitting fraud alerts

28         on behalf of consumers to Experian, Trans Union and Equifax; and

1    enjoining Defendants from placing and/or making, or authorizing the

2    placing or making of, any advertisements and/or representations which

3    contain false and misleading statements regarding Defendants' ability

4    and authority to place fraud alerts, the need for a good faith belief in

5    placing fraud alerts, the availability of fraud alerts as a proactive,

6    preventative measure, that consumers are entitled to automatic

7    renewals of fraud alerts, the efficacy of fraud alerts against all types of

8    fraud, that fraud alerts prevent access to credit reports, the difficulty of

9    obtaining fraud alerts through credit bureaus, that LifeLock places

10   fraud alerts directly with Experian, that consumers can only receive the

11   protection afforded by fraud alerts by purchasing LifeLock's service,

12   that creditors will call consumers who have a fraud alert on their file,

13   the source of the credit report provided by LifeLock, and, any other

14   advertising false or misleading advertising regarding fraud alerts, and

15   enjoining the use of the LifeLock name.

16   4.   For costs of suit herein incurred; and

17   5.   For such other and further relief as the Court may deem proper.

18                    EIGHTH CAUSE OF ACTION

19   1.   For restitution to the extent permitted by law;

20   2.   For disgorgement of profits;

21   3.   For costs of suit herein incurred; and

22   4.   For such other and further relief as the Court may deem proper.

23

24

25

26

27

28

LAI-2930464v1

1

## NINTH CAUSE OF ACTION

2      1.      For restitution to the extent permitted by law;

3      2.      For costs of suit herein incurred; and

4      3.      For such other and further relief as the Court may deem proper.

5    Dated: February 13, 2008                    JONES DAY

6

7                                               By: _____
                                                    Richard J. Grabowski
8
                                                Attorneys for Plaintiff
9                                               EXPERIAN INFORMATION
                                                SOLUTIONS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2     Plaintiff Experian Information Solutions, Inc. hereby demands trial by jury.

3

4     Dated:  February 13, 2008                      JONES DAY

5

6                                                          By:
                                                                Richard J. Grabowski
7
                                                          Attorneys for Plaintiff
8                                                         EXPERIAN INFORMATION
                                                          SOLUTIONS, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV08- 165 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] | **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] | **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] | **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

COPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Experian Information Solutions, Inc.
*a corporation*

PLAINTIFF(S)

v.

LifeLock, Inc.
*a corporation: and Does 1 Through 10, Inclusive*

DEFENDANT(S).

CASE NUMBER

**SACV08-00165 AG (MLGx)**

**SUMMONS**

TO:    DEFENDANT(S):  LifeLock, Inc.

A lawsuit has been filed against you.

Within    20    days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Richard J. Grabowski _____, whose address is JONES DAY, 3 Park Plaza, Suite 1100, Irvine, California 92614 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**ROLLS ROYCE PASCHAL**

Dated:  FEB 13 2008 _____

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    **SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Experian Information Solutions, Inc. | LifeLock, Inc. |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Maricopa County, Arizona |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Richard J. Grabowski          (949) 851-3939 JONES DAY 3 Park Plaza, Suite 1100 Irvine, CA  92614 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT:** $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiff brings claims pursuant to 15 U.S.C. § 1125 and various state laws arising from Defendant's fraudulent and illegal placement of fraud alerts in violation of 15 U.S.C. § 1681.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | | ☐ 380 Other Personal Property Damage | ☐ 530 General | |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No   ☐ Yes

If yes, list case number(s):

| FOR OFFICE USE ONLY:   Case Number: | SACV08-00165 AG (MLGx) |
|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

III(b).  **RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑No   ☐ Yes

yes, list case number(s): _____

civil cases are deemed related if a previously filed case and the present case:

Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Orange County, California

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
   Arizona

List the California County, or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
   A substantial part of each claim alleged in the complaint occurred in Orange County, California.

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _____February 13, 2008_____

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |