1   Thomas R. Malcolm (State Bar No. 39248)
    trmalcolm@jonesday.com
2   Richard J. Grabowski (State Bar No. 125666)
    rgrabowski@jonesday.com
3   Marc K. Callahan (State Bar No. 156616)
    mkcallahan@jonesday.com
4   Matthew A. Berliner (State Bar No. 224384)
    mberliner@jonesday.com
5   JONES DAY
    3 Park Plaza, Suite 1100
6   Irvine, California  92614
    Telephone:  (949) 851-3939
7   Facsimile:   (949) 553-7539

8   Attorneys for Plaintiff
    EXPERIAN INFORMATION
9   SOLUTIONS, INC.

10

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13  EXPERIAN INFORMATION                Case No. SACV08-00165
    SOLUTIONS, INC., a corporation,     AG(MLG)
14
                 Plaintiff,             Assigned for all purposes to: Judge
15                                      Andrew Guilford
          v.
16                                      **PLAINTIFF EXPERIAN
    LIFELOCK, INC., a corporation; and  INFORMATION SOLUTIONS,
17  DOES 1 through 10, inclusive,       INC.'S MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
18               Defendant.             OPPOSITION TO LIFELOCK,
                                        INC.'S MOTION TO DISMISS**
19
                                        [Filed and Served Concurrently With
20                                      Experian Information Solutions,
                                        Inc.'s Request for Judicial Notice]
21
                                        Date:    May 19, 2008
22                                      Time:    10:00 a.m.
                                        Dept.:   10D
23

24

25

26

27

28
    LAI-2944194v1                                **MEMO OF P&As IN OPPOSITION
                                                    TO MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.      Introduction....................................................................................1

II.     Statement of Facts...........................................................................3

III.    Argument .......................................................................................3

    A.      LifeLock's Conduct Falls Outside of the FCRA..................................3

        1.      The FCRA Does Not Authorize Corporations, Such as LifeLock, to Place Fraud Alerts on Behalf of Consumers..........3

        2.      Fraud Alerts Are Only Available to Consumers Who Assert, in Good Faith, a Suspicion That They Have Been or Are About to Become a Victim of Identity Theft...................4

    B.      Experian Has Stated a Claim for Declaratory Relief ...........................5

        1.      Experian May Seek a Declaration of Its Obligations ................5

        2.      Declaratory Relief is Permitted in the Analogous Context of Banking Markets......................................................7

        3.      No Private Right of Action Must Exist for Experian to Seek Declaratory Relief ..............................................8

        4.      Alternatively, LifeLock Stands as an Agent for Consumers and Experian May Seek a Declaration of Its Rights vis a vis Its Obligations under the FCRA.................... 11

        5.      Experian Is Not Seeking Relief under the FCRA ................... 12

    C.      The FCRA Does Not Preempt Experian's State Law Claims............ 13

    D.      Experian has Properly Plead a Claim Under the Lanham Act .......... 16

        1.      Experian has Plead that it is a Competitor of LifeLock........... 16

        2.      LifeLock's Misrepresentations Are Not Puffery but Rather Actionable and Verifiable Statements of Fact ............ 17

        3.      The Alleged Misrepresentations do not Constitute Legal Opinion................................................................. 21

    E.      Experian has Standing under California Business & Professions Code Sections 17200 et seq. and 17500 et seq.................................. 23

    F.      Experian has Properly Plead a Claim for Unjust Enrichment/Restitution................................................................ 24

    G.      Experian has Properly Plead a Claim for Quantum Meruit .............. 24

1

# TABLE OF CONTENTS
## (continued)

**Page**

IV.    Conclusion ................................................................................................ 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

Cases

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937) ................................................................ 5

*AGG Enters. v. Wash. County,*
    281 F.3d 1324 (9th Cir. 2002) ................................................ 13

*Air Conditioning & Refrigeration Institute v. Energy Res. Conservation &
    Development Comm'n,*
    410 F.3d 492 (9th Cir. 2005) .................................................. 13

*Am. States Ins. Co. v. Kearns,*
    15 F.3d 142 (9th Cir. 1994) ..................................................... 7

*Anunziato v. eMachines, Inc.,*
    402 F.Supp.2d 1133 (C.D. Cal. 2005) ................................... 17

*Baker, Watts & Co. v. Saxon,*
    261 F.Supp. 247 (D.D.C. 1966) ................................................ 8

*Baker's Supermarkets, Inc. v. State, Dept. of Agric.,*
    248 Neb. 984 (1995) ................................................................ 6

*Bergen County v. Port of N.Y. Authority,*
    32 N.J. 303 (1960) .................................................................. 6

*Buckland v. Threshold Enterprise,*
    155 Cal.App.4th 798 (2007) .................................................. 24

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) .............................................................. 11

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998) ................................................ 13

*Catholic Charities of Maine, Inc. v. City of Portland,*
    304 F.Supp.2d 77 (D.C. Maine 2004) .................................... 10

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,*
    450 U.S. 311 (1981) .............................................................. 13

*Cipollone v. Liggett Group, Inc.,*
    505 U.S. 504 (2001) .............................................................. 15

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,*
    228 F.3d 24 (1st Cir. 2000) ................................................... 19

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999) ........................................... 18, 21

**TABLE OF AUTHORITIES**

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3    *Coastal Communications Corp. v. Adams/Laux Co., Inc.,*
      1996 WL 546880 (S.D.N.Y. 1996) ................................................................ 20

4

5    *County of San Bernardino v. Walsh,*
      158 Cal.App.4th 533 (2007) ......................................................................... 24

6    *Crane v. Derrick,*
      157 Cal. 667 (1910) ..................................................................................... 25

7

8    *CSX Transp., Inc. v. Easterwood,*
      507 U.S. 658 (1993) ..................................................................................... 13

9    *Cytyc Corp. v. Neuromedical Sys., Inc.,*
      12 F.Supp.2d 296 (S.D.N.Y. 1998) ............................................................. 17

10

11   *Dial A Car, Inc. v. Transportation, Inc.*
      82 F.3d 484 (U.S. App. D.C. 1996) ............................................................. 21

12   *Dupnik v. U.S.,*
      848 F.2d 1476 (9th Cir. 1988) ..................................................................... 13

13

14   *Estate of Mumford,*
      173 Cal. 511 (1916) ..................................................................................... 25

15   *Farmers Insurance Exchange v. Zerin,*
      53 Cal.App.4th 445 (1997) ........................................................................... 25

16

17   *Fed. Express Corp. v. U.S. Postal Serv.,*
      40 F.Supp.2d 943 (W.D. Tenn. 1999) .......................................................... 17

18   *Furer v. Paine, Webber, Jackson & Curtis, Inc.,*
      1982 WL 1309 at **1-2 (C.D. Cal. April 20, 1982) ..................................... 10

19

20   *G&C Auto Body Inc. v. Geico General Insurance Co.,*
      2007 WL 4350907 (N.D. Cal. 2007) ...................................................... 23, 24

21   *Gillette Co. v. Norelco Consumer Products Co.,*
      946 F.Supp. 115 (D. Mass 1996) ................................................................. 18

22

23   *Haggerty v. Warner,*
      115 Cal.App.2d 468 (1953) .......................................................................... 25

24   *Hall v. Time Inc.,*
      158 Cal.App.4th 847 (2008) ......................................................................... 23

25

26   *Healthpoint, LTD v. Ethex Corp.,*
      2004 WL 2359420 (W.D.Tex. 2004) ........................................................... 18

27   *Hirsch v. Bank of America,*
      107 Cal.App.4th 708 (2003) ......................................................................... 24

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Howard v. Blue Ridge Bank,*
371 F.Supp.2d 1139 (N.D. Cal. 2005)..................... 15

*Huntington Life Sciences, Inc. v. Stop Huntington Animal Cruelty USA, Inc.,*
129 Cal.App.4th 1228 (2005) ......................... 23

*Huskinson & Brown, LLP v. Wolf,*
32 Cal.4th 453 (2004)............................... 25

*In re Tobacco Cases II,*
41 Cal.4th 1257 (Cal. 2007) ......................... 15

*In re Trans Union Corp., Privacy Litigation,*
211 F.R.D. 328 (N.D. Ill. 2002) ................... 10, 11

*Italian Pasta Co. v. New World Pasta Co.,*
371 F.3d 387 (8th Cir. 2004) ......................... 18

*Jaramillo v. Experian Information Solutions, Inc.,*
155 F.Supp.2d 356 (E.D. Pa. 2001)..................... 15

*Jarecki v. G.D. Searle & Co. Polaroid Corp.,*
367 U.S. 303 (1961) ............................... 3, 5

*Kibler v. WFS Fin. Inc.,*
2000 WL 1470655, at *10 (C.D. Cal. Sept. 13, 2000) ..... 10

*Kournikova v. General Media Communications, Inc.,*
278 F.Supp.2d 1111 (C.D. Cal. 2003)................... 16

*Long v. Rumsey,*
12 Cal. 2d 334 (1938) ............................... 25

*Manchester Pac. Gateway LLC v. Cal. Coastal Comm'n,*
2007 WL 2900475 (S.D. Cal. 2007)...................... 8

*Maryland Casualty Co. v. Pac. Coal & Oil Co.,*
312 U.S. 270 (1941) ................................. 5

*McFarland v. Holcomb,*
123 Cal. 84 (1898) ................................. 25

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118, 127 S.Ct. 764 (2007) ................... 6

*Municipality of Anchorage v. Alaska,*
393 F.Supp.2d 958 (D. Alaska 2005) ................... 10

*Nashville, C. & St. L. Ry. v. Wallace,*
288 U.S. 249 (1933) ................................. 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Nat'l Bank of Detroit v. Wayne Oakland Bank,*
   252 F.2d 537 (6th Cir. 1958) ............................................................... 7

*Nelson v. Equifax,*
   522 F.Supp.2d 1222 (C.D. Cal. 2007) .............................................. 16

*Newport-Mesa Unified School District v. State of California Dep't of Educ.,*
   371 F.Supp.2d 1170 (C.D. Cal. 2005) .............................................. 12

*Nordberg v. Trilegiant Corp.,*
   445 F.Supp.2d 1082 (N.D. Cal. 2006) .............................................. 24

*Rice v. Santa Fe Elevator Corp.,*
   331 U.S. 218 (1947) ........................................................................... 13

*S. Shows, Inc. v. Exposition Enters., Inc.*
   226 U.S.P.Q. 351 (W.D.N.C. 1985) ................................................. 20

*Schilling v. Rogers,*
   363 U.S. 666 (1960) ............................................................................. 9

*Securities Indus. Ass'n v. Bd. of Governors of the Fed. Reserve Sys.,*
   628 F.Supp. 1438 (D.D.C. 1986) ........................................................ 9

*Sold, Inc. v. Town of Gorham,*
   868 A.2d 172 (2005) ............................................................................ 6

*Southern Cal. Housing Rights Center v. Los Feliz Towers Homeowners Ass'n.,*
   426 F.Supp.2d 1061 (C.D. 2005) ..................................................... 23

*State Chartered Banks in Wash. v. Peoples Nat'l Bank of Wash.,*
   291 F.Supp. 180 (W.D. Wash. 1966) ................................................. 7

*Summit Tech v. High-Line Med., Instruments, Co.,*
   933 F.Supp. 918 (C.D. Cal. 1996) .................................................... 16

*U-Haul Int'l, Inc. v. Jartran, Inc.,*
   522 F.Supp. 1238 (D.C. Ariz. 1981) ................................................ 20

*United Food & Commercial Workers v. Food Employers Council, Inc.,*
   827 F.2d 519 (9th Cir. 1987) ............................................................ 12

*Von Bulow v. Von Bulow,*
   634 F.Supp. 1284 (S.D.N.Y. 1986) ................................................ 8, 9

*Walker v. Fed. Land Bank of St. Louis,*
   726 F.Supp. 211 (C.D. Ill. 1989) ..................................................... 10

*Walker v. USAA Cas. Ins. Co.,*
   474 F.Supp.2d 1168 (E.D. Cal. 2007) .............................................. 24

# TABLE OF AUTHORITIES
## (continued)

**Page**

*White v. Trans Union, LLC,*
    462 F.Supp.2d 1079 (C.D. Cal. 2006).................................................. 19, 23

*Williams v. Nat'l Sch. of Health Tech., Inc.,*
    836 F.Supp. 273 (E.D. Pa. 1993)........................................................ 10

*Zenith Laboratories, Inc. v. Abbott Laboratories,*
    1996 WL 33344963 (D.N.J. 1996)...................................................... 8, 9

### Statutes

15 U.S.C. § 1681 ................................................................................... 1

15 U.S.C. § 1681a(1) ........................................................................... 8

15 U.S.C. § 1681(b) ............................................................................. 11

15 U.S.C. § 1681a(b) ........................................................................... 3

15 U.S.C. § 1681a(c) ........................................................................... 3

15 U.S.C. § 1681c-1 ....................................................................... 4, 14, 15

15 U.S.C. § 1681c-1(a) ...................................................................... 1, 14

15 U.S.C. § 1681c-1(a)(1) .................................................................. 3

15 U.S.C. § 1681c-1(a) ...................................................................... 1, 14

15 U.S.C. § 1681c-1(b) ....................................................................... 14

15 U.S.C. § 1681c-1(c) ....................................................................... 14

15 U.S.C. § 1681c-1(d) ....................................................................... 14

15 U.S.C. § 1681c-1(e) ....................................................................... 14

15 U.S.C. § 1681c-1(f) ....................................................................... 14

15 U.S.C. § 1681c-1(g) ....................................................................... 14

15 U.S.C. § 1681c-1(h) ....................................................................... 14

15 U.S.C. § 1681n ............................................................................... 11

15 U.S.C. § 1681o ............................................................................... 11

15 U.S.C. § 1681s ............................................................................... 10

15 U.S.C. § 1681t ............................................................................... 13

# TABLE OF AUTHORITIES
## (continued)

**Page**

15 U.S.C. § 1681t(b)(1) .................................................................. 14

15 U.S.C. § 1681t(b)(5)(B) ............................................................... 2

Cal. Bus. & Prof. Code § 17200 ................................................... 2, 23

Cal. Bus. & Prof. Code § 17204 ....................................................... 3

Cal. Bus. & Prof. Code § 17500 ................................................... 2, 23

Cal. Bus. & Prof. Code § 17535 ....................................................... 3

Cal. Civil Code §§ 1785.10-1785.19.5 ............................................ 17

16 C.F.R. § 239.7 ........................................................................... 20

### Other Authority

12 Moore's Federal Practice, Declaratory Judgments,
  §§ 57.80-57.85 ......................................................................... 11

10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure,*
  § 2751 (2d ed. 1983) ................................................................. 12

H.R. Rep. No. 108-264 ...................................................................... 4

S. Rep. No. 104-185 ........................................................................ 15

*http://en.wikipedia.org/wiki/Credit_freeze* ........................................ 17

## I.    INTRODUCTION

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") requires a consumer reporting agency to place, for free, a fraud alert in the file of a consumer upon the direct request of a consumer, or an individual acting on behalf of or as a personal representative of a consumer, who asserts in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft. 15 U.S.C. § 1681c-1(a). The FCRA does not require a consumer reporting agency, such as Experian, to place fraud alerts when requested by a corporation nor when a request is made on behalf of individuals without the good faith suspicion that they have been or will be victims of identity theft. LifeLock, Inc., operates a fraud alert mill by requesting the wholesale placement of massive numbers of fraud alerts, while misrepresenting and concealing its corporate status and the true states of mind of its customers. To maximize its illicit profits and divert consumers from products which legitimately offer proactive protection against identity theft, such as the credit freezes offered by Experian, LifeLock falsely advertises the nature and efficacy of its services. LifeLock's pattern of misrepresentation and concealment impairs Experian's ability to reject invalid and fraudulent requests.

In response, LifeLock does not attempt to claim that the FCRA authorizes LifeLock to request such alerts or that Experian is obligated to honor requests made by LifeLock. Nor does LifeLock defend the truthfulness of its advertisements or its representations to Experian. Instead, LifeLock argues that because its scam attempts to invoke the fraud alert mechanism provided by the FCRA, it is free to do and say anything, and cannot be held accountable by the Court in this action.

This Court may properly entertain Experian's claims for relief. The dispute between Experian and LifeLock is ripe, real and palpable, and LifeLock's conduct is damaging Experian and the credit reporting system. No statutory cause of action against LifeLock need exist for this Court to declare the extent of Experian's

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

obligations under the fraud alert statute, nor to declare that LifeLock's conduct falls outside of that statute. Experian has standing to pursue its Lanham Act claims because LifeLock and Experian are competitors in the business of identity theft protection, and in the credit markets in general. LifeLock's advertisements make numerous false statements of verifiable fact that can support Experian's federal and state law claims for false and misleading advertising. For example, LifeLock's claim that it is the *only one* that can provide the services it does, (Compl. ¶ 55), is provably (and admittedly) false. Pl. Mot. 1:18-19. Similarly, LifeLock tells consumers that it offers a proven solution that prevents identities from being stolen before it happens, (Compl. ¶ 50), but, as LifeLock's brief admits, fraud alerts do not protect against the theft of personal information. Pl. Mot. 1:12-13.

Experian's state law claims are not preempted by the FCRA. Preemption is narrowly limited to claims "with respect to the conduct required by the specific provisions of . . . Section 1681c-1," (15 U.S.C. § 1681t(b)(5)(B)), but none of the claims asserted against LifeLock are based on conduct required of LifeLock by those specific provisions. Further, the FCRA's preemption provisions are directed solely at consumer state law claims against consumer reporting agencies or furnishers of credit information. These preemption provisions do not apply where, as here, a consumer reporting agency is a plaintiff suing a corporation for unfair business practices.

LifeLock's Motion also conflates the restitution remedy available under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") and False Advertising Law, *id.*, § 17500 *et seq.* ("FAL"), with the requirements of standing after Proposition 64. The only requirement for Experian to have standing is that it has suffered injury in fact and has lost money or property as a result of LifeLock's unlawful competition. Cal. Bus. & Prof. Code §§ 17204, 17535. Experian has plead such a loss; it has also plead a loss of business and the expenditure of money. Compl. ¶¶ 44, 109, 121. The remaining issues raised by

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

1  LifeLock's Motion are similarly defective and are addressed below.

2  **II.   STATEMENT OF FACTS**

3       In the interest of brevity, Experian will not recite the facts and allegations

4  pled in its Complaint herein.  Experian respectfully refers the Court to its detailed

5  Complaint for a description of the facts giving rise to this dispute.  Compl. ¶¶ 4 -59.

6  **III.  ARGUMENT**

7       **A.    LifeLock's Conduct Falls Outside of the FCRA.**

8            **1.    The FCRA Does Not Authorize Corporations, Such as**
9                 **LifeLock, to Place Fraud Alerts on Behalf of Consumers.**

10      Fraud alerts are available to consumers "[u]pon the direct request of a

11  consumer, *or an individual acting on behalf of or as a personal representative of*

12  *a consumer*, who asserts in good faith a suspicion that the consumer has been or is

13  about to become a victim of fraud or related crime, including identity theft…" and

14  upon "appropriate proof of the identity of requestor."  15 U.S.C. § 1681c-1(a)(1)

15  [emphasis added].  *See* Compl. ¶¶ 17-29 (discussing fraud alerts in detail).

16      The FCRA does not authorize a corporation, such as LifeLock, to request

17  fraud alerts on behalf of consumers, nor does it require a consumer reporting

18  agency to do anything when a request is made by a corporation.  The FCRA

19  defines a "consumer" as an individual.  15 U.S.C. § 1681a(c).  This contrasts

20  sharply with the definition of a "person" in the FCRA as "any individual,

21  partnership, corporation, trust, estate, cooperative, association, government or

22  government subdivision or agency or other entity."  15 U.S.C. § 1681a(b).  If the

23  term "individual" were to include non-real persons, such as LifeLock, there would

24  be no reason to define "person" as any "individual …[and] corporation."  *See*

25  *Jarecki v. G.D. Searle & Co. Polaroid Corp.,* 367 U.S. 303, 307 (1961) (stating

26  that "[t]he maxim *noscitur a sociis,* that a word is known by the company it keeps,

27  while not an inescapable rule, is often wisely applied where a word is capable of

28  many meanings. . ..").  The fact that "person" is defined to include individuals

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

(which in turn is the same as a consumer) and other inchoate entities evidences Congress' intent that "individual," as used in the FCRA, does not include companies or corporations. Had Congress intended for corporations to be able to request fraud alerts on behalf of consumers it would have used the defined term "person" rather than "individual" in Section 1681c-1.

The legislative history of the fraud alert provisions of the FCRA confirms this conclusion. Congress "use[d] the word 'individual' instead of 'person' to ensure that the provision would only apply to specific individuals such as a consumer's authorized family members or guardians (or attorneys acting as personal representatives), authorized representatives from bona fide military service organizations, ***and not to companies and entities*** such as credit repair clinics." *See* Request for Judicial Notice Exh. "A" (H.R. Rep. No. 108-263 at 40 (Sept. 4, 2003)) [emphasis added]. Congress carefully drafted the language of the fraud alert provisions to prevent to rise of an industry of fraud alert mills such as LifeLock.

**2.    Fraud Alerts Are Only Available to Consumers Who Assert, in Good Faith, a Suspicion That They Have Been or Are About to Become a Victim of Identity Theft.**

No consumer may request a fraud alert unless such consumer "asserts in good faith a suspicion that the consumer has been or is about to be a victim of fraud or related crime, including identity theft." 15 U.S.C. § 1681c-1. LifeLock requests fraud alerts on behalf of consumers who do not have the requisite suspicion that they have been, or are about to become, victims of fraud, and deceives Experian into honoring such requests. Compl. ¶¶ 9, 41-42, 66, 74-78. By surreptitiously requesting unwarranted fraud alerts, LifeLock injures Experian and the consumers it purports to help by flooding Experian and the credit reporting system with invalid fraud alert requests. Like the boy who cried wolf, LifeLock's mass placement of unwarranted fraud alerts diminishes the effectiveness of the fraud

**MEMO OF P&As IN OPPOSITION TO MOTION TO DISMISS**

alert system for those consumers who actually have a good reason to believe that they are about to be victims of identity theft. *See e.g.,* Compl. ¶ 11. While LifeLock flouts the plain language of Section 1681c-1 requiring a good faith suspicion, a Court may not do so. *See e.g. Jarecki,* 367 U.S. at 307 (requiring a court to interpret a statute in a manner that gives effect to all of its provisions). LifeLock's calculated efforts to indiscriminately sell fraud alerts to all demonstrates why Congress sought to preclude corporations from turning the fraud alert system into a business.

## B.    Experian Has Stated a Claim for Declaratory Relief.

Whether a claim for declaratory relief can be stated regarding the boundaries of the fraud alert section of the FCRA apparently presents an issue of first impression. LifeLock argues that that no claim under the Declaratory Judgment Act can be stated under the FCRA if there is no private cause of action under the FCRA. LifeLock's argument fails for five reasons.

### 1.    Experian May Seek a Declaration of Its Obligations.

Relief under the Declaratory Judgment Act is appropriate "[w]here there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties upon the facts alleged . . . ." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937). Whether declaratory relief is appropriate depends upon the particular circumstances, and the question "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test . . . ." *Maryland Casualty Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270 (1941). Courts therefore do not look for a particular set of circumstances to determine whether declaratory relief is appropriate. *Id.* Instead, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id; See*

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

1 | *also, MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 773
2 | (2007).

3 |      Experian is subject to regulation under the FCRA, and has alleged that it has
4 | been, and will continued to be harmed, by LifeLock's conduct.  As such, it is
5 | appropriate for Experian to seek a declaration of its obligations.  This
6 | understanding comports with the Uniform Declaratory Judgment Act which states
7 | that:

8 |      any person interested under a deed, will, written contract or other
9 |      writings constituting a contract, or whose rights, status ***or other legal***
10 |      ***relations are affected by a statute***, municipal ordinance, contract or
11 |      franchise, may have determined any question of construction or
12 |      validity arising under the instrument, statute, ordinance, contract, or
13 |      franchise and obtain a declaration of rights, status or other legal
14 |      relations there under.

15 | Uniform Declaratory Judgment Act, Section 2 (emphasis added).  The Advisory
16 | Committee Notes for Rule 57 of the Federal Rules of Civil Procedure (regarding
17 | claims for declaratory relief) explain that "the Uniform Declaratory Judgment Act
18 | affords a guide to the scope and function of the Federal Act."[1]

19 |

---

20 | [1] This comports with the Supreme Court's treatment of declaratory relief in
21 | *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 259-260 (1933). *See also Sold, Inc. v. Town of Gorham*, 868 A.2d 172, 177 (2005) ("[A]nticipatory challenges
22 | pursuant to the declaratory judgment law have been allowed to seek clarification of the applicability of laws, ordinances, and administrative regulations to impending
23 | projects."); *Baker's Supermarkets, Inc. v. State, Dept. of Agric.*, 248 Neb. 984, 991-
24 | 992 (1995) (noting that the Act "provides that any person whose rights are affected
25 | by a statute may have determined any question of construction or validity under the statute and obtain a declaration of rights"); *Bergen County v. Port of N.Y.
26 | Authority*, 32 N.J. 303, 307 (1960) (a person whose rights, status or other legal
27 | relations are affected by a statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights,
28 | status or other legal relations thereunder).

                               **MEMO OF P&As IN OPPOSITION**

                     **TO MOTION TO DISMISS**

1    There is currently a real and palpable dispute between LifeLock and

2    Experian that permits this Court to hear Experian's claim for Declaratory

3    Judgment. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143-44 (9th Cir. 1994)

4    (describing the requirements to seek declaratory relief). Experian has alleged that

5    LifeLock's conduct falls outside the scope of the FCRA and has injured Experian.

6    As a result, it is proper for this Court to provide declaratory relief.

7       **2.    Declaratory Relief is Permitted in the Analogous Context of**
8            **Banking Markets.**

9    In the analogous context of banking regulation, courts grant declaratory relief

10   notwithstanding the lack of a private right of action. In *Nat'l Bank of Detroit v.*

11   *Wayne Oakland Bank*, 252 F.2d 537 (6th Cir. 1958), a state bank sought a

12   declaration that the defendant national bank's operation of a branch in its vicinity

13   would violate federal banking regulations providing that a national bank could

14   open a branch in a city, but only if no other bank were already operating in that

15   city. *Id.* at 539-41. Despite the lack of a private right of action, the Sixth Circuit

16   held that the state bank had standing to protect its rights via the Declaratory

17   Judgment Act. *Id.* at 544.

18   Likewise, in *State Chartered Banks in Wash. v. Peoples Nat'l Bank of Wash.*,

19   291 F.Supp. 180 (W.D. Wash. 1966), the district court held that a state bank could

20   enforce its rights under similar regulations through a declaratory relief action:

21       [S]tate (and federal) banks have the legal right to operate within a

22       competitive scheme that has been statutorily defined. If an act

23       threatens to disrupt the balance of that scheme, those others who are

24       affected have the right to legal redress.

25       . . .

26       Their [the state banks'] future existence and economic health may

27       soon be in jeopardy by an alleged violation of federal law, a law

28

**MEMO OF P&As IN OPPOSITION**
**TO MOTION TO DISMISS**

designed for their protection.  These state banks therefore have 'legal'

interests which will be substantially affected by the challenged action.

*Id*. at 184-85.

This result was found again in *Baker, Watts & Co. v. Saxon*, 261 F.Supp. 247

(D.D.C. 1966), where the district court held that investment bankers had standing

to bring a declaratory action against the Comptroller of the Currency to enjoin him

from authorizing unlawful competition from banks.  *Id.* at 248; *see also Von Bulow*

*v. Von Bulow*, 634 F.Supp. 1284, 1296 (S.D.N.Y. 1986) (declaratory relief

available despite the absence of a private right of action); *Zenith Laboratories, Inc.*

*v. Abbott Laboratories*, 1996 WL 33344963, at *7 (D.N.J. 1996) (same).

LifeLock's unfair competition with Experian directly threatens the stability and

sanctity of the credit markets.  Because of this harm and its continued threat, it is

proper for this Court to determine the parties' rights and obligations.

Reliance on these cases is particularly appropriate in the context of the

FCRA.  In enacting the FCRA, Congress acknowledged the interdependence of the

credit reporting industry and the banking system.  *See* 15 U.S.C. § 1681(a)(1)

(stating that "[t]he banking system is dependent upon fair and accurate credit

reporting.  Inaccurate credit reports directly impair the efficiency of the banking

system, and unfair credit reporting methods undermine the public confidence which

is essential to the continued functioning of the banking system.").  LifeLock's

attempt to disrupt the credit reporting system via unfair competition in its operation

of a fraud alert mill is akin to the unfair competition addressed in the banking

cases.

### 3.    No Private Right of Action Must Exist for Experian to Seek Declaratory Relief.

Declaratory relief claims challenging the authority of a defendant to act

under a statute do not fail because the statute does not provide a private cause of

1   action. *Manchester Pac. Gateway LLC v. Cal. Coastal Comm'n*, 2007 WL

2   2900475 (S.D. Cal. 2007).  In *Manchester Pac.*, the court refused to dismiss a real

3   estate developer's claim for a judicial declaration that the California Coastal

4   Commission was unauthorized to require its acquisition of a Coastal Development

5   Permit under the Coastal Zone Management Act ("CZMA").  *Id.* at *1-2.  The

6   Coastal Commission moved for dismissal of the claim on grounds that the CZMA

7   provided no private right of action.  *Id.* at *5 n.2.  The court denied the Coastal

8   Commission's motion because the developer's "action [was] brought pursuant to

9   the Declaratory Judgment Act, not the CZMA."  *Id.*  Because the developer

10  "neither [sought] to assert a claim under CZMA nor obtain a CZMA related

11  remedy," the court denied the motion to dismiss.  *Id.*[2]

12       The cases cited by LifeLock for the proposition that the lack of a private

13  cause of action defeats Experian's claim for declaratory relief are distinguishable.

14  None of the cases cited by LifeLock are controlling Ninth Circuit precedent.[3]  None

15  deal with whether declaratory relief regarding fraud alerts is or is not available.

16  None deal with whether a plaintiff subject to a regulatory scheme can seek a

17  declaration of the scope of its obligations under that scheme.  None deal with

18

19  [2] Other courts agree.  *See Zenith Laboratories, Inc.*, at *7 (D.N.J. 1996)
    ("[R]egardless of the fact that the [Federal Food, Drug and Cosmetic Act] does not
20  expressly provide for a private right of action it is not an action under the FFDCA
    plaintiff seeks to pursue but under the Declaratory Judgment and All Writs Acts
21  and state law."); *Securities Indus. Ass'n v. Bd. of Governors of the Fed. Reserve
    Sys.*, 628 F.Supp. 1438, 1441 (D.D.C. 1986) ("This action was brought under the
22  Declaratory Judgment Act . . . .  Whether or not the Glass-Steagall Act creates a
    private right of action, therefore, is simply irrelevant for purposes of determining
23  whether this Court may enjoin Banker's Trust's sales activities."); *Von Bulow*, at
    1296 (S.D.N.Y. 1986) (declaratory relief available despite the absence of a private
24  right of action).
25
    [3] The lone Supreme Court case cited is inapposite as well.  *See Schilling v. Rogers*,
26  363 U.S. 666 (1960) (denying German national's claim for return of property under
27  Trading With The Enemy Act after Executive Branch denied claim; judicial review
    of administrative decision precluded by Trading with the Enemy Act).
28

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

1    whether declaratory relief can be granted where a stranger to a statutory scheme

2    purports to act under the color of that scheme.  None are factually analogous.[4]

3         Moreover, LifeLock's citation to authority for the proposition that

4    declaratory or injunctive remedies under the FCRA are unavailable *to consumers* is

5    misplaced and misapplied here. The Federal Trade Commission was provided the

6    responsibility to seek injunctive/declaratory relief regarding "compliance with the

7    requirements imposed" by the FCRA on "consumer reporting agencies and all

8    other persons subject thereto."  15 U.S.C. § 1681s; *In re Trans Union Corp.,*

9    *Privacy Litigation,* 211 F.R.D. 328, 339 (N.D. Ill. 2002).  The FCRA delineates the

10   _____

11   [4] The cases are distinguishable and harmful to LifeLock's position in other respects;
     for example, many seek declarations that a law had been violated or not complied

12   with.  *See e.g., Municipality of Anchorage v. Alaska,* 393 F.Supp.2d 958, 961-62
     (D. Alaska 2005) (contending that state "violates federal law" and did not comply

13   with federal law); *Kibler v. WFS Fin. Inc.,* 2000 WL 1470655, at *10 (C.D. Cal.

14   Sept. 13, 2000) (seeking declaratory relief for "violations of Bankruptcy Code
     section 524 and the FDCPA;"), *id.* at * 9 (plaintiff's claims would disrupt the

15   remedial scheme of the Bankruptcy Code); *Furer v. Paine, Webber, Jackson &*

16   *Curtis, Inc.,* 1982 WL 1309 at **1-2 (C.D. Cal. April 20, 1982) (court had already
     concluded conduct was legal; seeking declaration that defendant "violated" the

17   SEC Act and Regulation T and contracts entered into in violation of such sections

18   were void.); *Catholic Charities of Maine, Inc. v. City of Portland,* 304 F.Supp.2d
     77 (D.C. Maine 2004) (federal statute that was exclusively enforced by HUD did

19   not preempt municipal ordinance); *Williams v. Nat'l Sch. of Health Tech., Inc.,* 836

20   F.Supp. 273, 280-81 (E.D. Pa. 1993) (seeking declaration against Secretary of
     Education preventing the enforcement of federally guaranteed student loans;

21   declaration to interpret provision of law that was subject of pending administrative

22   rule making process would interfere with that process); *Walker v. Fed. Land Bank*
     *of St. Louis,* 726 F.Supp. 211, 214 (C.D. Ill. 1989) (granting summary judgment on

23   declaratory relief claim; declaratory relief claim sought declaration of defendants'

24   noncompliance with federal law, asserted same facts as previously dismissed
     complaint, and was premised on private right of action).  The authorities are also

25   harmful to LifeLock's other positions in its Motion.  For example, *Furer* ruled on

26   the legality of the conduct at issue notwithstanding the lack of a private cause of
     action. *See Furer*, at *1. *Catholic Charities* held that the lack of a private cause of

27   action under a federal statute precluded the claim that the statute preempted state

28   claims. 304 F.Supp.2d at 93.

1  rights and responsibilities between furnishers of credit information and consumers.

2  *See e.g.* 15 U.S.C. § 1681(b). LifeLock is not a consumer reporting agency nor a

3  person subject to the FCRA. *See also* Section III(C) below. As such, whether or

4  not the FCRA allows consumers to seek equitable relief under the FCRA is

5  irrelevant to the issues before the Court.[5] Furthermore, "[a]bsent the clearest

6  command to the contrary from Congress, federal courts retain their equitable

7  powers . . . in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442

8  U.S. 682, 705 (1979). Here, there is no clear command from Congress that

9  consumer reporting agencies are prohibited from seeking equitable relief from

10  companies such as LifeLock.

11

    **4.**     **Alternatively, LifeLock Stands as an Agent for Consumers**

12            **and Experian May Seek a Declaration of Its Rights *vis a vis***

13            **Its Obligations under the FCRA.**

14        If Experian does not place the fraud alerts requested by LifeLock on behalf

15  of its customers, it may potentially be subject to lawsuits by the underlying

16  consumers whose fraud alerts were rejected. These consumers would have

17  standing to assert claims against Experian for its failure to honor LifeLock's

18  improper fraud alerts. 15 U.S.C. §§ 1681n and 1681o. In each such case, LifeLock

19  would be an indispensable party, as it is the instigator, conduit and profiteer of its

20  placement of illicit fraud alerts. In such actions, Experian could seek a declaration

21  that it is not liable to LifeLock's customers if it does not honor the fraud alerts

22  placed by LifeLock. However, that would result in Experian filing numerous

23  lawsuits against each of LifeLock's individual customers – an absurd result. The

24  Court need not, and should not, engage in the fiction that this is a dispute with

---

25  [5] The legislative record for the FCRA indicates that Congress denied consumers

26  equitable remedies to ensure the uniform application of the FCRA in all

27  jurisdictions. *See e.g., In re Trans Union Corp Privacy Litig.*, 211 F.R.D., at 339-
340. Uniformity of regulation is not an issue here because the relief Experian seeks

28  would not create fragmented or inconsistent application of the statute.

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

1   consumers duped by LifeLock.

2       If Experian is without a remedy against LifeLock under the Declaratory

3   Judgment Act, Experian must await suit by one of LifeLock customers when

4   Experian declines to implement unauthorized fraud alerts submitted by LifeLock

5   on their behalf. LifeLock's position is in direct contradiction to the recognized

6   purpose of the Declaratory Judgment Act, which is: to avoid multiplicity of actions

7   by affording an adequate, expedient, and inexpensive means for declaring in one

8   action the rights and obligations of the litigants. *United Food & Commercial*

9   *Workers v. Food Employers Council, Inc.*, 827 F.2d 519, 524 (9th Cir. 1987)

10   (quoting 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure*

11   § 2751, at 569-71 (2d ed. 1983).[6] LifeLock is responsible for generating hundreds

12   of thousands of baseless fraud alert requests through its misleading advertising and

13   for the unauthorized submission of those requests to Experian. LifeLock is

14   therefore properly called to defend its dealings in a single action before this Court.

15          **5.    Experian Is Not Seeking Relief under the FCRA.**

16       LifeLock's reliance on the absence of a cause of action under the FCRA in

17   the hands of Experian is misplaced. Experian does not seek a declaration that

18   LifeLock has violated the FCRA or is liable to it under the statute. Rather,

19   Experian seeks judicial declarations that LifeLock is operating ***outside of the***

20   ***FCRA,*** and that Experian's obligations under the statute are not triggered by

21   LifeLock's conduct. Compl. ¶¶ 61–63. For example, Experian seeks a declaration

22   that LifeLock is not a consumer or individual under the fraud alert provisions of the

23

[6] Central District authority supports this analysis. In *Newport-Mesa Unified School
District v. State of California Dep't of Educ.*, 371 F.Supp.2d 1170 (C.D. Cal. 2005)
(Taylor, J.), the plaintiff school district faced the dilemma of complying with a
state law requiring it to provide copies of copyrighted test protocols to parents of
special education students, thus risking an infringement suit by the copyright
holder, or violating the law, and facing loss of its state funding. *Id.* at 11743-74.
Given these choices, the school district had standing to assert its interest in
avoiding liability for copyright infringement. *Id.* at 1174.

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

FCRA.  Such a declaration is not the equivalent of a damages claim for violation of the statute.

### C.    The FCRA Does Not Preempt Experian's State Law Claims.

LifeLock contends that Experian's state law claims are expressly preempted by the FCRA.  Conceding that the interpretation of the preemption section at issue is a question of first impression, (Pl. Mot. at 10:27-28), LifeLock wrongly argues that the preemption section should be given a broad interpretation.  Preemption of state law by federal statute or regulation is not favored in the absence of persuasive reasons—either that the nature of the related subject matter permits no other conclusion, or that the Congress has unmistakably so ordained."[7]  *Dupnik v. U.S.*, 848 F.2d 1476, 1480 (9th Cir. 1988), quoting *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981).  Preemption will not lie unless it is "the clear and manifest purpose of Congress.'"  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).  Accordingly, "express preemption statutory provisions should be given a narrow interpretation."  *Air Conditioning & Refrigeration Institute v. Energy Res. Conservation & Development Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005).

In its Motion, LifeLock misconstrues and misapplies the preemption provisions of the FCRA and the authority interpreting those provisions.  15 U.S.C. Section 1681t provides:

(a) In General:

Except as provided in subsections (b) and (c), this subchapter does not

annul, alter, affect, or exempt any person subject to the provisions of

---

[7] To determine Congress' intent on preemption, courts begin with the text of the provision in question, and move on to the structure and purpose of the Act in which it occurs.  *AGG Enters. v. Wash. County*, 281 F.3d 1324, 1328 (9th Cir. 2002); *see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998).

1    this subchapter from complying with the laws of any State with respect

2    to the collection, distribution, or use of any information on consumers,

3    or for the prevention or mitigation of identify theft except to the extent

4    that those laws are inconsistent with any provision of this subchapter,

5    and then only to the extent of the inconsistency.

6    (b) General exceptions:

7    No requirement or prohibition may be imposed under the laws of any

8    State - -

9    (5) with respect to the conduct required by the specific provisions of

10    (B) Section 1681c-1 [regarding fraud alerts].

11    The plain language of the statute does not expressly preempt Experian's

12    claims against LifeLock. LifeLock's brief focuses on the phrase "no requirement

13    or prohibition may be imposed," but overlooks that preemption is limited to claims

14    "with respect to the conduct *required* by the specific provisions of ... Section

15    1681c-1." [emphasis added]. None of the claims asserted against LifeLock are

16    based on conduct required by the specific provisions of Section 1681c-1. Section

17    1681c-1 requires conduct by three types of entities: (i) consumer reporting

18    agencies, (15 U.S.C. §§ 1681c-1(a), (b), (c), (d), (e), (g), (ii)), resellers, (15 U.S.C.

19    §§ 1681c-1(f), and (iii)) and actual and prospective users of credit information (15

20    U.S.C. § 1681c-1(h)). The statute does not require any conduct or action on the

21    part of LifeLock.[8] That LifeLock defrauds a consumer reporting agency into

22    believing that it is required to take action pursuant to Section 1681c-1 does not

23    make LifeLock's actions "required conduct."[9]

_____

24    [8] Nor is LifeLock even an entity whose conduct triggers a duty imposed by Section

25    1681c-1. Section 1681c-1 provides that a consumer reporting agency's duties are

triggered by the "direct request of a consumer or an individual acting on behalf of

26    or as a personal representative of a consumer." LifeLock is neither.

27    [9] LifeLock essentially argues that because fraud alerts are the subject of Section

1681c-1, any claims with respect to the subject matter of fraud alerts are

28    preempted, and cites to numerous cases interpreting Section 1681t(b)(1). However,

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

1    Further, the purpose of the FCRA's preemption provisions is not to prohibit

2    state claims by Experian against companies like LifeLock, but rather to prevent

3    state law claims by consumers against consumer reporting agencies and providers

4    of credit information.  *See Howard v. Blue Ridge Bank*, 371 F.Supp.2d 1139, 1143

5    (N.D. Cal. 2005) (stating that "[w]hile furnishers may be liable to private litigants

6    [pursuant to the FCRA] based on information they provide to credit agencies

7    [citations omitted], it appears that Congress intended the FCRA to be the sole

8    remedy against these furnishers");[10] *Jaramillo v. Experian Information Solutions,*

9    *Inc.*, 155 F.Supp.2d 356, 361-62 (E.D. Pa. 2001) (same).  Indeed, the legislative

10   history of the FCRA and its preemption provisions indicate that its purpose was to

11   protect credit reporting agencies from state law claims and to create a single set of

12   rules for credit reporting agencies such as Experian.  *See* Request for Judicial

13   ─────────────────────

     (continued...)

14
     reliance on Section 1681t(b)(1) is misplaced.  Section 1681(t)(b)(1) preempts "any
15   claims with respect to subject matter regulated by" the subsections it specifies.  *See*
     Section 1681t(b)(1).  Congress did *not* choose to preempt claims "with respect to
16   the subject matter regulated by" Section 1681c-1, fraud alerts.  Instead, Congress
17   adopted a narrower scope of preemption – the conduct required by the specific
     provisions of Section 1681c-1.
18
     [10] Incredibly, LifeLock purports to quote *Howard* for the proposition that Section
19   1681t(b) "expresses Congress' intent to preclude state law claims [addressing
20   topics or entities discussed in subsection (b)], and instead subject them solely to the
     FCRA."  Pl. Mot. at 11:16-19.  LifeLock simply rewrites *Howard* – deleting the
21   actual text "against furnishers of information" and replacing it with the bracketed
22   phrase "addressing topics or entities discussed in sub section b."  *See Howard*, 371
     F.Supp.2d at 1143.  LifeLock's other authorities admittedly do not interpret the
23   section at issue, and are otherwise distinguishable.  For example, *In re Tobacco*
24   *Cases II*, 41 Cal.4th 1257 (Cal. 2007) and *Cipollone v. Liggett Group, Inc.*, 505
25   U.S. 504 (2001), are cases dealing with the Food and Drug Administration's
     approval of cigarette advertising.  *See e.g., Cipollone*.  There, consumers could not
26   sue tobacco companies regarding their advertising/products because the FDA
27   specifically approved the advertisement/products and the applicable statutes
     preempted the state law consumers claims.  The cases did not prevent tobacco
28   companies from suing others for their unlawful and/or fraudulent conduct.

**MEMO OF P&As IN OPPOSITION**
                                        - 15 -                    **TO MOTION TO DISMISS**

Notice Exh. "B" (S. Rep. No. 104-185, at 53-55 (1995)) (stating the preemption provision "bars private citizens from bringing suit against furnishers of information for violations of certain duties imposed on them").

Lastly, nothing in the language of the FCRA, the case authority, or the legislative history of the statute indicates that Congress intended to preempt state law claims by Experian against companies, such as LifeLock, which injure Experian. None of the authority relied upon by LifeLock says otherwise. Instead, the FCRA authority relied upon by LifeLock is distinguishable and inapplicable because it consists entirely of consumers bringing actions against credit reporting agencies or furnishers of credit information. *See e.g.*, *Nelson v. Equifax*, 522 F.Supp.2d 1222 (C.D. Cal. 2007).

### D.    Experian has Properly Plead a Claim Under the Lanham Act.

#### 1.    Experian has Plead that it is a Competitor of LifeLock.

LifeLock argues that Experian and LifeLock are not competitors. However, Experian has alleged that they are competitors, (Compl. ¶ 101), and the Court need go no farther to deny the Motion. In any event, the specific allegations of the Complaint demonstrate that, for purposes of the Lanham Act, the two are competitors in the field of credit, banking, finance and credit protection. Competitors are persons who "compete for the same dollars from the same target audience," *Kournikova v. General Media Communications, Inc.*, 278 F.Supp.2d 1111, 1117 (C.D. Cal. 2003) (tennis star Anna Kournikova and the adult magazine Penthouse were competitors for purposes of magazines, videos and calendar sales), or those endeavoring to do the same thing and each offering to perform the same act, furnish merchandise or render services better or cheaper than his rival. *Summit Tech v. High-Line Med., Instruments, Co.*, 933 F.Supp. 918, 937 (C.D. Cal. 1996).

Experian sells products that are meant to protect consumers from identity

theft, such as credit freezes.[11]  Compl. ¶ 101; *see also* California Civil Code §

1785.10-1785.19.5. LifeLock effectively markets that its practice of placing serial

fraud alerts acts as a *de facto* credit freeze – proactive and permanent until a

consumer requests their removal and without needing a good faith belief in

imminent victimization by identity theft.  Indeed, even LifeLock's name and its

myriad references to "locking down" a credit file invoke the popular name of credit

freezes.  Notably, a credit freeze is exclusive of a subsequent fraud alert.[12]  Further,

Experian also charges consumers for credit reports; which is part of the "product"

LifeLock purportedly provides.  Experian and LifeLock therefore compete for the

same dollars from the same customers (*i.e.,* consumers seeking protection from

identity theft or to review their credit reports).

> **2.    LifeLock's Misrepresentations Are Not Puffery but Rather Actionable and Verifiable Statements of Fact.**

LifeLock argues that "several" alleged misrepresentations are legal opinion

or puffery.  However, to prevail on motion to dismiss, LifeLock must establish that

all the statements and net misrepresentations plead in the complaint are not

actionable.  A dismissal is improper where at least some actionable statements have

been plead. *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1139 (C.D. Cal.

2005); *Fed. Express Corp. v. U.S. Postal Serv.*, 40 F.Supp.2d 943, 956 (W.D.

---

[11] A credit freeze, also popularly known as a credit report freeze, a credit report lock down, a credit lock down, or a credit lock, allows an individual to control how a consumer reporting agency such as Experian is able to sell his or her data. The credit freeze locks the data at the consumer reporting agency until an individual gives permission for the release of the data.  Because a credit freeze effectively stops any access to the credit report, it places a block in the process of issuing credit. Individuals who freeze their credit reports must therefore unfreeze their reports before they wish to apply for credit themselves. *See,* *http://en.wikipedia.org/wiki/Credit_freeze.*

[12] Experian is informed and believes that LifeLock instructs its potential customers to drop their credit freezes with Experian so that LifeLock can place serial fraud alerts on their behalf.

**MEMO OF P&As IN OPPOSITION TO MOTION TO DISMISS**

1    Tenn. 1999); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F.Supp.2d 296, 301

2    (S.D.N.Y. 1998).    As discussed below, LifeLock cannot meet this burden.

3                    **(a)    Misrepresentations Regarding LifeLock's Service.**

4            Experian has alleged misrepresentations that are specific and measurable,

5    capable of being proved false or of being reasonably interpreted as a statement of

6    objective fact, *see Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d

7    725, 731 (9th Cir. 1999); *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d

8    387, 391 (8th Cir. 2004).    Experian has alleged that LifeLock's advertisements

9    misrepresent the scope, effect and efficacy of LifeLock's services.    These

10   representations are verifiable statements of fact.    *See e.g., Healthpoint, LTD v.*

11   *Ethex Corp.*, 2004 WL 2359420 (W.D.Tex. 2004) (determining that the

12   defendants' statements misrepresented the nature, characteristics and qualities of

13   the defendants' product).[13]    For example:

14           1.    LifeLock misrepresents that it provides "a proven solution that

15   prevents your identity from being stolen before it happens."    Compl.¶ 50(iv).

16   Whether LifeLock is the "proven solution" for identity theft is a verifiable fact.[14]

17   Indeed, the statement alone admits that LifeLock's claim is subject to proof.

18           2.    LifeLock misrepresents that it can protect against all types of

19   identity theft, including computer hacking and fraudulent access to bank accounts.

20   *See e.g.,* Compl. ¶ 52.    Whether LifeLock's services can protect against these types

21   of identity theft is a specific and verifiable claim.

22           3.    LifeLock misrepresents that creditors will call consumers to

---

23   [13] Nor does Experian agree with LifeLock's characterization of other statements as

24   puffery.  Page restrictions preclude Experian from providing a misrepresentation by
     misrepresentation analysis, and Experian simply offers some examples here.

25   Experian refers the Court to its Complaint at ¶¶ 48-58 (identifying

26   misrepresentations).

27   [14] *See e.g. Gillette Co. v. Norelco Consumer Products Co.*, 946 F.Supp. 115, 121-
     122 (D. Mass 1996) (describing how a plaintiff may establish a Lanham Act claim

28   based on a defendant's claim that its product has been proven superior).

verify who they are and that its services will prevent others from accessing a consumer's credit report.  Compl. ¶¶ 53, 57.  These statements are verifiably false.[15]

Moreover, the issue is not just whether certain specific statements are puffery,[16] but whether the advertisements, taken as a whole, may be interpreted as implying a false message.  *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000).[17]  If that net impression is not puffery, it is actionable.  Here, Experian has pled that LifeLock misrepresents the scope and effectiveness of fraud alerts, that fraud alerts prevent access to credit reports, that it is more difficult to obtain fraud alerts through a credit bureau, and that creditors will call consumers to verify their identity.  *See e.g.,* Compl. ¶¶ 48,

---

[15] Another example: LifeLock claims that it will set fraud alerts within an hour, Compl. ¶ 56.  In fact, LifeLock appears to have insufficient resources to place fraud alerts, with a resulting back log of orders in the tens of thousands likely causing lengthy delays before LifeLock even requests that the alerts be set.  This is a critical misrepresentation, because time is of the essence for those individuals who believe that they have suffered or about to suffer identity theft.

[16] LifeLock also argues that its use of the word "lock" in its name and descriptions about how its service works are puffery.  They are not.  Credit freezes are popularly known as "locks", *see* fn. 11 and these statements wrongfully imply that LifeLock is placing a credit freeze and locking access to a credit report.  LifeLock's own advertising emphasizes the factual nature its name is intended to convey: "as our name states, we're the lock…"  Compl. ¶53 (ii).

[17] In *Clorox*, the tag line "Whiter is not possible" flashed in commercials with images of consumers who normally used bleach to achieve white clothes and who were impressed by the results obtained by using defendant's bleach alternative.  *See id.* at 28-29, 35.  The court held that because the "overall theme" of the advertising campaign was that bleach is unnecessary, a factfinder could reasonably conclude that these advertisements claim that defendant's product is equal or superior in whitening ability to a detergent and bleach combination.  *Id.*  The defendant's later, modified commercials showed the same images, but the tag line read: "Compare with your detergent . . . Whiter is not possible."  *Id.* at 29.  The court concluded that, the advertisements still made a similar superiority claim.  As a result, the court held that the lower court had erred in dismissing the plaintiff's Lanham Act falsity claim.  *Id.* at 35-36

**MEMO OF P&As IN OPPOSITION**
**TO MOTION TO DISMISS**

52, 54 and 55.  These impressions are all verifiably false.

           **(b)**    **LifeLock's Guarantee and Representation that Only it Can Provide this Service Are Patently False.**

      In its advertising, LifeLock falsely guarantees the efficacy of its service. That is a verifiable statement of fact.  *See* Compl. ¶¶ 48, 52, 55.  LifeLock represents that "At LifeLock, We Guarantee Your Good Name."  Compl. ¶ 55. "[G]uarantees are often employed in such a manner as to constitute representations of material fact."  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F.Supp. 1238, 1248 (D.C. Ariz. 1981) (citing Fed. Trade Comm'n Regulation, 16 C.F.R. § 239.7).  Thus, a consumer may reasonably rely on LifeLock's representations that LifeLock *will* protect the consumer's bank accounts and credit file.  However, LifeLock cannot protect a consumer's bank account, computer, or credit report in any way.  In fact, LifeLock's conduct may actually injure its customers' credit ratings.  Compl. ¶ 28.

      Even assuming that LifeLock can place fraud alerts on a consumer's behalf, LifeLock goes further and represents "*No one else* [guarantees your good name] because *no one else can*."  Compl. ¶ 55 [emphasis added].  LifeLock's representation necessarily implies that LifeLock *alone* can protect a consumer's bank passwords and that LifeLock *alone* can place fraud alerts.  This statement is not mere puffery, but rather, a specific and verifiable statement of fact.  *See Coastal Communications Corp. v. Adams/Laux Co., Inc.*, 1996 WL 546880, at *2 (S.D.N.Y. 1996) (finding dismissal improper where a reasonable consumer could interpret the advertisement that defendant published "only niche titles" in particular fields to be a statement of fact); *see also U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F.Supp. 1238, 1244-47 (D.C. Ariz. 1981) (finding that the claim that "Only Jartran can rent you trailers designed for the times" was specific enough to support a Lanham Act claim where its competitor rented comparable trailers).[18]

---

[18] *See also S. Shows, Inc. v. Exposition Enters., Inc.*, 226 U.S.P.Q. 351, 355 (W.D.N.C. 1985) (granting a preliminary injunction enjoining defendant from

1    Experian has pled facts to show this representation is false.  First, LifeLock

2  is not the only party that can protect a consumer's bank account password; in fact,

3  LifeLock *cannot* protect a consumer's bank accounts in any way.  Second,

4  LifeLock is not the only party that can place fraud alerts.  Qualified consumers or

5  their individual representatives may place these fraud alerts directly with the credit

6  bureaus.  Indeed, LifeLock's own brief concedes that that the statement: "We

7  Guarantee Your Good Name.  No one else does because no one else can" is false.

8  *See* Pl. Mot. 1:18-19 (stating that: "As LifeLock has made clear, the service it

9  provides is something consumers can do for themselves").  As such, this statement

10  alone is fatal to LifeLock's Motion.

11            **3.    The Alleged Misrepresentations do not Constitute Legal**
12                  **Opinion.**

13    LifeLock argues that, in the absence of an unambiguous ruling by a court,

14  statements based on interpretations of statues are not actionable under the Lanham

15  Act.  LifeLock cites a line of cases originating with *Dial A Car, Inc. v.*

16  *Transportation, Inc.*, 82 F.3d 484 (U.S. App. D.C. 1996).  However, *Dial A Car*

17  acknowledged that a statute or regulation could be so clear on its face that a ruling

18  regarding its interpretation would not be a prerequisite for a Lanham Act claim.  *Id.*

19  at 489, n. 3; *see also, Coastal Abstract Service, Inc.,* 173 F.3d. at 732 (9th Cir.

20  1999) (parties disputed interpretation of statute in court whose "correct

21  application.... was not knowable").

22    The statute at issue, Section 1681c-1, is clear.  Section 1681c-1 authorizes

23  only individuals – not corporations – to request the placement of fraud alerts on

24  behalf of another person.  *See* section III(A)(1) above.  No prior adjudication is

25  needed for LifeLock to understand that it is not an individual allowed to place

26  ────────────────

(continued...)

27  distributing advertisements claiming to be "Charlotte's Only Major Home and

28  Garden Show," where plaintiff had been producing a similar show).

LAI-2944194v1                                       **MEMO OF P&As IN OPPOSITION**
                         - 21 -                      **TO MOTION TO DISMISS**

fraud alerts. Representations stating or implying that LifeLock, a corporation, is authorized to request their placement are not reconcilable with the statute and are thus false based on its plain language. *See e.g.* Compl. ¶¶ 48, 56.

Likewise, there can be no dispute that the FCRA expressly requires that consumers have a good faith belief that they have been, or are likely to be, a victim of identity theft prior to placing a fraud alert. No prior adjudication is needed for LifeLock to know that everyone – including those without such a good faith belief – cannot request the placement of a fraud alert. However, LifeLock's advertisements state and imply that everyone can place a fraud alert at any time for any reason, and that the requisite contemporaneous good faith suspicion is not required. *See e.g.* Compl. ¶¶ 49, 50, 51 (advertising on its website a customer testimonial: "I had seen a new report about LifeLock. The CEO gave out his social security number on TV! The reporter tried to use it to open new accounts and couldn't. That is when I signed up." and "When I first learned about a company called LifeLock that protects families from identity theft, my husband was skeptical. I signed us up anyway and forgot about it").

Notably, LifeLock does not contest Section 1681c-1's interpretation (although the issue would be plainly cognizable on a motion to dismiss), but instead suggests that that the Court should not interpret it. Pl. Mot. at 22:9-11. The reason is obvious: any interpretation of Section 1681c-1 by the Court will inevitably deprive LifeLock, even under its own analysis, of its asserted defense for falsely representing its authority to request fraud alerts.

LifeLock's affirmative representations that it is "use[s] integrity and operates within the law," (Compl. ¶ 48), and requests that Experian place fraud alerts, are also actionable for several reasons. First, as discussed above, LifeLock is not acting within Section 1681c-1. Second, LifeLock fails to disclose that there has been and is an active dispute with Experian regarding LifeLock's operations, that Experian does not knowingly accept fraud alert requests by LifeLock, and that

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**

LifeLock engages in surreptitious, fraudulent and illicit conduct to request fraud alerts.  Third, the statement conveys the lack of a dispute and/or that there has been an adjudication of the legality of LifeLock's activities, and is seemingly designed to overcome the media reports about the legal difficulties of LifeLock's co-founder, and the FTC ban on some credit related activities.  Compl. ¶ 32.

### E.    Experian has Standing under California Business & Professions Code Sections 17200 *et seq.* and 17500 *et seq.*

Experian has properly alleged that it has been injured and lost money or property as a result of LifeLock's unlawful and fraudulent conduct.  *See e.g.,* Compl. ¶ 122.  That is all that is required to have standing under Business & Professions Code Sections 17204 and 17535 to seek restitution and/or injunctive relief.  *See G&C Auto Body Inc. v. Geico General Insurance Co.,* 2007 WL 4350907, at *3 (N.D. Cal. 2007); *White v. Trans Union, LLC,* 462 F.Supp.2d 1079, 1083-84 (C.D. Cal. 2006).  "The statute [regarding the UCL] does not require that the losses in question were the product of the defendant's wrongful acquisition of the plaintiff's property."  *White,* 462 F.Supp.2d at 1083-84.  Experian's specifically pled expenditures and losses also give it standing.  *Hall v. Time Inc.,* 158 Cal.App.4th 847, 854 (2008) (and cases collected therein).[19]

Moreover, even if Experian is not entitled to "restitution" under the UCL or the FAL, it may still seek an ***injunction*** prohibiting LifeLock from engaging in its unlawful and fraudulent conduct.  *See White,* 462 F.Supp.2d at 1083 (stating that "[a]lthough [defendant] is correct that Plaintiffs would be required to show that [defendant] took money directly from them in order to obtain money damages

---

[19] *See also Southern Cal. Housing Rights Center v. Los Feliz Towers Homeowners Ass'n.,* 426 F.Supp.2d 1061 (C.D. 2005) (UCL standing exists where plaintiff lost financial resources and diverted staff time investigating the case against the defendants); *Huntington Life Sciences, Inc. v. Stop Huntington Animal Cruelty USA, Inc.,* 129 Cal.App.4th 1228, 1240 (2005) (standing requirement satisfied where plaintiff's home and car were vandalized).

under the UCL [citations omitted], no such burden exists here, *where Plaintiffs seek only injunctive relief*") [emphasis added]; *G&C Auto Body Inc.,* 2007 WL 4350907, at *3 (same).[20]

### F.   Experian has Properly Plead a Claim for Unjust Enrichment/Restitution.

California law recognizes a cause of action for unjust enrichment. *Hirsch v. Bank of America,* 107 Cal.App.4th 708, 722 (2003) (reversing lower court's dismissal of the plaintiff's unjust enrichment claim); *Nordberg v. Trilegiant Corp.,* 445 F.Supp.2d 1082, 1100 (N.D. Cal. 2006) (denying motion to dismiss unjust enrichment claim). As *Nordberg* discusses, those cases – including those relied upon by LifeLock finding that California does not allow an unjust enrichment claim – rely on semantic arguments as opposed to legal analysis. *Id.* Claims seeking unjust enrichment/restitution are entirely proper. *Id.*

LifeLock's argument that Experian must have conferred a benefit on LifeLock is also contrary to California law. "Many instances" of unjust enrichment "do not involve the restoration of anything the claimant previously possessed," including cases involving the disgorgement of profits wrongfully obtained. *See e.g., County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 542 (2007).

### G.   Experian has Properly Plead a Claim for Quantum Meruit.

Experian has sufficiently pled the required elements of a claim for quantum

---

[20] LifeLock's reliance on *Walker v. USAA Cas. Ins. Co.*, 474 F.Supp.2d 1168 (E.D. Cal. 2007) is misplaced. The District Court in *Walker* erroneously conflated what is recoverable as "restitution" under Section 17203 with the standing requirements imposed by Proposition 64 in Section 17204. The errors in *Walker*'s analysis and holding are explained at length in *G&C Auto Body Inc.*, 2007 WL 4350907, at *3-4 (N.D. Cal. 2007). LifeLock's reliance on *Buckland v. Threshold Enterprise*, 155 Cal.App.4th 798 (2007) is also misplaced. *Buckland*, did not address the issue framed by LifeLock, whether injunctive relief is available under the UCL or FAL when restitution may not be obtained. In any event, *Buckland* indicates that where, as here, an equitable claim for restitution exists, standing to pursue a UCL claim also exists. *Buckland*, 155 Cal.App.4th at 817-18.

meruit.  To plead such a claim, a plaintiff must allege: 1) defendant requested that plaintiff perform services, 2) plaintiff performed the services, 3) defendant has not paid for the services, and 4) the reasonable value of the services provided. *Farmers Insurance Exchange v. Zerin*, 53 Cal.App.4th 445, 460 (1997); *Haggerty v. Warner*, 115 Cal.App.2d 468, 475 (1953); CACI No. 371.  A complaint that pleads these elements states facts from which the liability of the defendant is presumed, and is good against a general demurrer.  *McFarland v. Holcomb*, 123 Cal. 84, 86 (1898).  Experian has sufficiently pled a cause of action for quantum meruit in that it alleges that LifeLock requested Experian to perform valuable services, Experian performed those services and was never compensated by LifeLock for them, and Experian can estimate the reasonable value of the services provided to LifeLock.  Compl. ¶¶ 135-37.[21]

## IV.    CONCLUSION.

For the foregoing reasons, Experian respectfully requests that LifeLock's Motion be denied in its entirety.

Dated:  April 21, 2008                    JONES DAY

By: /s/ Thomas R. Malcolm
          Thomas R. Malcolm
Attorneys for Plaintiff
EXPERIAN INFORMATION
SOLUTIONS, INC.

---

[21] The authorities cited by LifeLock are inapposite.  They do not involve cases where, as here, a party was defrauded into providing services for the other party's profit that it would not otherwise have provided. *See Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453 (2004) (law firm sought quantum merit recovery for services rendered at the request of another law firm); *Estate of Mumford*, 173 Cal. 511 (1916) (denying quantum meruit recovery of attorneys' fees when there was no evidence that other party requested plaintiff to perform services); *Long v. Rumsey*, 12 Cal. 2d 334 (1938) (family member unable to recover compensation for services rendered to another family member up until death when conduct of parties inconsistent with intent to compensate); *Crane v. Derrick*, 157 Cal. 667 (1910) (son unable to recover compensation for services rendered to invalid mother).

**MEMO OF P&As IN OPPOSITION
TO MOTION TO DISMISS**